## SIMS and OTHERS *v.* RICKETS.

HUSBAND AND WIFE.—None of the disabilities imposed upon married women have attached to the condition of a married man, who is as free to receive the title to property, and dispose of it, after marriage as before, except that he cannot by his conveyance affect the inchoate right of his wife to his real estate.

SAME.—*Conveyance by Husband to Wife.*—A conveyance from a husband to his wife, without the intervention of a trustee, is void at law.

SAME.—*Equity.*—A direct conveyance from a husband to his wife will be sustained and upheld in equity in either of the following cases, namely: first, where the consideration of the transfer is a separate interest of the wife yielded up by her for the husband's benefit, or that of their family, or which has been appropriated by him to his uses; second, where the husband is in a situation to make a gift to his wife, and distinctly separates the property given from the mass of his property, and sets it apart to the separate, sole, and exclusive use of his wife.

SAME.—Where a wife advances money to her husband, or the husband is indebted to the wife upon any valid consideration, the wife stands as the creditor of her husband, and if a conveyance is made to pay or secure such liability, the wife will hold the property free from the claims of other creditors, where the transaction is unaffected by unfairness or fraud.

SAME.—*Contract between Husband and Wife.*—Whenever a contract would be good at law if made by a husband with trustees for his wife, that contract will be sustained in equity, when made by the husband and wife without the intervention of trustees.

SAME.—*Conveyance to Wife.*—Prior to the recent legislation in this State authorizing married women to hold real estate to their separate use, when a conveyance was made by a stranger to a married woman or to a trustee for her, it was necessary, in order to give her a separate use in the property, that such conveyance should contain words clearly indicating such intention, but such words were unnecessary in a conveyance from a husband to his wife, for the law presumed that it was intended for her separate and exclusive use.

SAME.—*Statute.*—Section 5 of the act entitled "an act touching the marriage relation and liabilities incident thereto" (approved May 31st, 1852), makes all lands held by a married woman at the time of her marriage, or acquired by her subsequently, hers absolutely, and enables her to use, enjoy, and control the same independently of her husband, and as her separate property; and since the passage of that act a conveyance of land to a married woman need not contain words indicating that she is to hold the property to her separate use.

SAME.—*Conveyance to Wife.*—Conveyances from a husband to his wife are not sustained in equity, if there is some feature in them impeaching their fairness and certainty, as that they are not in the nature of a provision for the wife, or where they interfere with the rights of creditors, or when the property given or granted is not distinctly separated from the mass of the husband's property.

SAME.—*Husband.*—In consequence of the absolute power which a man possesses over his own property, he may make any disposition of it which does not interfere with the existing rights of others.

SAME.—*Provision for Wife.*—When a husband is free from debt, and has no children, and conveys property, to his wife for a nominal consideration, the law will presume that it was intended as a provision for his wife.

SAME.—A conveyance from a husband to his wife which is good in equity vests the title to the property conveyed in the wife as fully, completely, and absolutely as though the deed had been made by a stranger upon a valuable consideration moving from the wife.

APPEAL from the Howard Circuit Court.

BUSKIRK, J.—This action is founded on two written instruments; one, a deed of conveyance of the real estate in controversy; and two, a will subsequently made by the grantor in the deed. The material facts charged in the complaint are these: That Clement G. Rickets, being the absolute owner in fee of the premises described in the complaint, on the 12th day of January, 1856, by a general warranty deed, conveyed the said premises, in fee, directly to Mary Rickets, who was then his wife; that the said Rickets on the 8th day of May, 1856, made his last will and testament, and that on the 17th of the same month, he added a codicil thereto; that by the said will he bequeathed to his wife certain personal property therein described, and an annuity of three hundred and sixty-five dollars, payable semi-annually, and directed that the sum of six thousand and eighty-three dollars and thirty-three cents should be invested by his executor for the purpose of raising such legacy; that in the event the said annuity should prove insufficient for the comfortable maintenance of his wife during sickness or ill health, his executor was directed and authorized to invest such other sum as, in his discretion, should be necessary for that purpose, and to pay her the interest of said sum whenever, in his dis-

cretion, her necessities might require it; that by the codicil to the said will, the executor was directed to pay his widow, as soon after his decease as should be convenient, the further and additional sum of one thousand dollars, with interest thereon, from the date of his death to the time of the payment, which money was to be used by her in purchasing for herself a private residence; that the said will, after making certain specific legacies to his brothers and sisters, contained the following clause, namely: "Fifth. I give and bequeath all the rest, residue, and remainder of my estate, real, personal and mixed, to be equally divided between my brothers and sisters, or their heirs, except Letitia; that is to say, the said residue is to be divided into eight equal parts, and one part thereof I give and bequeath unto the children of my deceased sister, Sarah Courtright;" then follow the names of seven of his brothers and sisters, to whom or to whose heirs where they are dead, he gives and bequeaths one equal eighth part of the residue of his estate, in the same language in which he gives and bequeaths to the children of his deceased sister Sarah, except as to the names; that by the sixth clause of his will he authorized and empowered his executor to sign, seal, execute, and acknowledge all such deeds of conveyance as might be necessary to the granting and conveying to the purchaser or purchasers of all such lands as he might contract for the sale of in his lifetime; that it was further provided by the said will that upon the death of the said Mary Rickets, the sums which he had directed to be invested to raise the legacies for her should be divided in the same manner, and paid as is directed in the fifth clause of his will, in which he had disposed of the residue of his estate; that the said Clement G. Rickets departed this life on the 22d day of March, 1858, in Columbia county, Pennsylvania, leaving surviving him the said Mary Rickets, as his widow, but leaving no child, father, or mother him surviving; that the deed of conveyance from the said Rickets to his wife Mary, was recorded in the recorder's office of Howard county, in the State of Indiana, where the lands conveyed

are situated, on the 12th day of May, 1858; that the said deed was executed in Columbia county, in the State of Pennsylvania, and the consideration expressed therein was the sum of one dollar; that the said Mary Rickets has, from the date of the said deed of conveyance, had and held the same, and that since the death of the said testator she has exercised and still exercises absolute control of the said premises, and pretends and claims to be the absolute owner thereof; that the plaintiffs are the brothers and. sisters, and the descendants of such as are dead, of the testator, and are the persons referred to and named in the residuary clause of the said will; that the deed of conveyance is absolutely void, by reason of the fact that when the same was made, the grantor and grantee were husband and wife; that the said deed being void, no title passed to the said Mary Rickets; and that the title to the said premises remained in the said Clement G. Rickets until his death, when the title thereto became and was vested in the plaintiffs, under and by virtue of the residuary clause of the said will. The prayer of the complaint was, that the said deed of conveyance from the said Clement G. Rickets to the said Mary Rickets be set aside and canceled, and that the plaintiffs recover the possession of the said premises, and one thousand dollars damages for the use and occupation thereof. Copies of the deed and will were filed with, and constitute parts of, the complaint. The appellee demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and the plaintiffs refusing to amend, the court rendered judgment for the defendant. Proper exceptions were taken to these several rulings, and the only error assigned here is upon the action of the court in sustaining the demurrer to the complaint.

It is quite obvious that if the deed is valid and conveyed an estate in fee simple, absolute and unconditional, to the grantee therein named, the grantor could have no power to make a subsequent bequest of the same premises, he having already parted with his title thereto by deed; and

that, therefore, if the deed set out in the complaint be a valid one, the appellants who claim title to the premises by virtue of the will of Clement G. Rickets, who was the grantor in the said deed, can have no valid title to the said premises.

The validity of the deed is, therefore, the real question in the case. The appellants claim that the deed was absolutely void, for the reason that it was made by a husband directly to his wife, without the intervention of a trustee. The appellee admits that the deed is void at law, but maintains that it will be upheld and sustained in equity.

The adjudicated cases in this court do not very clearly define when and in what cases equity will sustain a conveyance direct from husband to wife. This court, in *Bunch* v. *Bunch*, 26 Ind. 400, say, "The deed to the land in question, executed by the defendant to the plaintiff, during their coverture, was void in law. This is not questioned by the plaintiff's counsel; indeed, the complaint praying that the title may be vested and quieted in her is based on the assumption that the deed is void at law, and appeals to the equity powers of the court for its confirmation. Such conveyances, though void at law, are sometimes upheld and confirmed by courts of equity. The confirmation of such contracts is not a right to be enforced in all cases. Such claims are addressed to the sound discretion of the court, and are only confirmed after a most cautious examination, in clear cases, where such confirmation is demanded by the clearest dictates of right and justice."

We have made a very careful examination of the elementary works and decisions bearing upon this question. The decisions are not uniform and consistent with each other. It is important that some fixed and definite rules should be established, by which we are to be governed in the decision of such cases, as it is not safe to leave such questions to the mere discretion of the court, for in such case, the peculiar views or prejudices of the judge would determine the rights of parties. According to the strict rules of the old common law, the wife was not permitted to take and enjoy either

real or personal property, independent of her husband. These rules were modified by the courts of equity, and have recently been abolished by statute in this State. It is now the settled law in this State, and in the most of the states of the Union, that a wife may take, hold, and enjoy to her sole, separate, and exclusive use, both real and personal property, and in this State she may encumber and alienate her separate real estate by her husband joining with her in the mortgage or deed. There is now no limitation upon the power of the wife to take and hold real estate by inheritance, devise, or purchase. The limitation is upon her power of alienation. This she cannot do, unless her husband joins with her in the conveyance. It is also the admitted doctrine in this State, that a married woman may contract in reference to her separate property, and while she may not create a personal liability, she may charge her seperate property for a debt contracted in reference thereto. The disabilities imposed upon married women by the common law have been, to a great extent, removed by the principles of equity and the statutes passed to secure their rights. Even after the doctrine was established, that a married woman might hold real estate to her separate and exclusive use, the rule was inflexible at common law, that she could acquire no valid title by a conveyance direct from her husband; but the courts of equity have modified the harshness of that rule. The rule that a wife could make no valid contract or agreement with her husband, was based upon the same principle as the rule that she could not hold real estate to her separate and exclusive use independent of her husband. Both of these rules were established in consequence of the unity of person between husband and wife. The legislation of this State has destroyed the unity in person between husband and wife so far as their rights of property are concerned. The strictness and rigor of these old rules should be modified, so as to conform them to the now well settled rights of property between husband and wife.

STORY says, it was formerly supposed that the interposition

of trustees was, in all arrangements of this sort, whether made before or after marriage, indispensable for the protection of the wife's rights and interests. In other words, it was deemed absolutely necessary that the property, of which the wife was to have the separate and exclusive use, should be vested in trustees for her benefit, and that the agreement of the husband should be made with such trustees, or, at least, with persons capable of contracting with him for her benefit. But although, in strict propriety, that should always be done, and it is usually done in regular and well considered settlements, yet it has for more than a century been established in courts of equity, that the intervention of trustees is not indispensable, and that whenever real or personal property is given, or devised, or settled upon a married woman, either before or after marriage, for her separate and exclusive use, without the intervention of trustees, the intention of the parties shall be effectuated in equity, and the wife's interest protected against the marital rights and claims of her husband and of his creditors also. 2 Story Eq. 600, 601, sec. 1380.

In *Sexton* v. *Wheaton*, 8 Wheat. 229, where the validity of a postnuptial voluntary settlement made by a husband upon his wife was in question, MARSHALL, C. J., says :

" It would seem to be a consequence of that absolute power which a man possesses over his own property that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition of it, if it be fair and real, will be valid." Speaking of the case before him, he says : " The appellant contends that the house and lot contained in this deed constituted the bulk of Joseph Wheaton's estate, and that the conveyance ought on that account to be deemed fraudulent. * * * If a man entirely unincumbered has a right to make a voluntary settlement of a part of his estate, it is difficult to say how much of it he may settle."

The doctrine is thus stated by the Supreme Court of the United States in *Wallingsford* v. *Allen*, 10 Pet. 583 :

"Agreements between husband and wife, during coverture,

for the transfer from him of property directly to the latter, are undoubtedly void at law. Equity examines with great caution before it will confirm them. But it does sustain them when a clear and satisfactory case is made out that the property is to be applied to the separate use of the wife. Where the consideration of the transfer is a separate interest of the wife, yielded up by her for the husband's benefit, or that of their family, or which has been appropriated by him to his uses; where the husband is in a situation to make a gift of property to the wife, and distinctly separates it from the mass of his property for her use—either case equity will sustain, though no trustee has been interposed to hold for the wife's use. In *More* v. *Freeman*, Bunb. 205, it was determined that articles of agreement between husband and wife are binding in equity, without the intervention of a trustee. Other cases may be cited to the same purpose. In regard to grants from the husband to the wife, an examination of the cases in the books will show that when they have not been sustained in equity, it has been on account of some feature in them impeaching their fairness and certainty, as that they were not in the nature of a provision for the wife, or when they interfered with the rights of a creditor, or when the property given or granted had not been distinctly separated from the mass of the husband's property."

In *Putnam* v. *Bicknell*, 18 Wis. 333, it is said: "Though void at law, an absolute conveyance of real or personal property from the husband directly to his wife is good in equity, and sufficient, so far as the form is concerned, to divest the husband of such property, and to vest the same in the wife, as against all persons save the creditors of the husband, especially when the transfer is fairly made, upon a meritorious or valuable consideration."

In *Huber* v. *Huber*, 10 Ohio, 371, it was held "that a husband may, during his life, settle a separate estate upon his wife, that is, he may (there being no claims of creditors to forbid it) transfer property to his wife in which she never had any beneficial interest, and which will enure to her as her

separate estate. This may be done even without the intervention of a trustee. A court of equity would, if necessary, appoint one to execute the intentions of the husband."

In *Simmons* v. *McElwain*, 26 Barb. 419, it is said : "It is true that the deed from the defendant to his wife was void in law, for a husband cannot, during coverture, make a grant or conveyance to his wife. But such a grant will be upheld in equity, when it is necessary to prevent injustice."

In *Wilder* v. *Brooks*, 10 Minn. 50, it is said : "And had the conveyance been made to any person other than his wife, and even for a merely nominal consideration, we see no reason why it would not have been completely unassailable. If these premises are sound, it follows that if the instrument was effectual between Andrew M. Torbet and his wife to pass the property, it was good as to the world, and *vice versa*.

Again it is said : "Contracts of all kinds, between husband and wife, are objected to, not only because they are inconsistent with the common law doctrine that the parties are one person in law, but because they introduce the disturbing influences of bargain and sale into the marriage relation, and induce a separation rather than a unity of interests. But certainly neither in reason nor on principle can it be contended that so far as this objection is concerned, there is any difference between the cases of a conveyance by a husband to trustees for the use of a wife or to a third person who conveys to the wife, or to the wife directly. Each of these would have precisely the same effect, in conferring upon the wife property and interest independent of and separate from her husband. And the tendency of modern legislation, as well of judicial interpretation, is to improve and liberalize the marital relation by recognizing and upholding the reasonable rights of both parties to the matrimonial contract."

The law is thus stated by the Supreme Court of Mass., in the case of *Whitten* v. *Whitten*, 3 Cush. 191 : "The like presumption exists in the case of purchase in the name of his wife, and of securities taken in her name. Indeed, Mr. Justice STORY says, that the presumption is stronger in the

case of a wife, than in that of a child. It is, therefore, an established doctrine, that when the husband pays for land conveyed to the wife, there is no resulting trust for the husband; but the purchase will be regarded and presumed to be an advancement and provision for the wife. This is fully supported by various cases, as well as by the best writers."

MASON, J., in the case of *Stockett* v. *Holliday*, 9 Md. 480, says: "The case of *Bowie* v. *Stonestreet*, 6 Md. Rep. 418, conclusively settles that a contract, which can be enforced in a court of equity, may be entered into between a husband and wife for the transfer of property from the former to the latter, for a *bona fide* and valuable consideration."

The Supreme Court of Vermont, in the case of *Barron* v, *Barron*, 24 Vt. 375, states the law thus: "And as a general rule, whenever a contract would be good at law, when made with trustees for the wife, that contract will be sustained in equity, when made with each other without the intervention of trustees. It is upon this principle that in many cases the husband will be held as trustee of the wife, and the wife entitled to the privileges belonging to a creditor of the husband."

Though a stranger's conveyance of property, or covenant to pay money to a married woman, or to a trustee for her, in order to give her a separate use, must contain words indicating such intention, it seems to be well settled that such words are unnecessary in the husband's conveyance or covenant. The law upon this subject is well stated by the Supreme Court of Conn., in *Deming* v. *Williams*, 26 Conn. 226, where it is said: "Now had such transfers been made by a parent into the name of a child, the child would acquire the interest as an advancement, such intent being inferred by law from the relationship of the parties. The same is true in case of a wife, where the husband purchases land and has the deed made directly to her, there being in the case no creditors or fraud upon any other party. The law attaches to absolute deeds and transfers a full alienation of the entire interest or property, so far as the alienation is permitted by the principles of law or equity. Such are all gifts or deeds

by husbands to wives of real or personal estate found in the books, from the case of *Slanning* v. *Style* (decided in 1734 and found in 3 P. Wms. 334), to the present time, and they are exceedingly numerous.    They sustain the principle, that so far as the form and substance of the gift or alienation are important, that which would be good if made to a third person is good in a court of equity if made by the husband to his wife."

We have had urged upon our attention and consideration the cases of *White* v. *Wager*, 25 N. Y. 328, and *Winans* v. *Peebles*, 32 N. Y. 423.    We have given these cases a careful consideration, and are of the opinion that they are not in conflict with the views we have expressed.    In both of those cases the question involved was the validity of conveyances from wives to their husbands.    We have already seen that a married woman in this State is under a disability so far as the alienation of her land is concerned.    Her conveyance is absolutely void unless her husband joins with her.    Such is the law in New York.    None of the disabilities imposed upon married women have attached to the condition of a married man, who was as free to receive the title to property and to dispose of it after marriage as before, with the exceptions that he could not receive a deed directly from his wife, because she could not convey without his joining, and he could not join in a conveyance to himself, and that he had no power to dispose of or in any manner affect the inchoate right of his wife in and to his real estate.    As to the world in general, the estate of marriage does not affect his ability to acquire title to or dispose of his property just as he might have done if he had not been married.    These cases correctly held that a deed direct from a wife to her husband was void at law, and would not be sustained in equity, for the reason that this disability was imposed upon married women to protect them from the influence of their husbands.

The adjudicated cases in England are in entire accord with the decisions in this county.    We refer to the following English and American cases on this subject, besides those here-

tofore referred to. *Lucas* v. *Lucas*, 1 Atk. 270; *Freemantle* v. *Bankes*, 5 Ves. 79; *Battersbee* v. *Farrington*, 1 Swanst. 106; *Latourette* v. *Williams*, 1 Barb. 9; *Neufville* v. *Thomson*, 3 Edw. Ch. 92; *McKennan* v. *Phillips*, 6 Whart. 571; *Kee* v. *Vasser*, 2 Ired. Eq. 553; *Stanwood* v. *Stanwood*, 17 Mass. 57; *Phelps* v. *Phelps*, 20 Pick. 556; *Adams* v. *Brackett*, 5 Met. 280; *Jones* v. *Obenchain*, 10 Gratt. 259; *Walter* v. *Hodge*, 2 Swanst. 97; *More* v. *Freeman*, Bunb. 205; *Lady Arundell* v. *Phipps*, 10 Ves. 139; *Shepard* v. *Shepard*, 7 Johns. Ch. 57; *Wood* v. *Warden*, 20 Ohio, 518; *Gaines* v. *Poor*, 3 Met. Ky. 503; *Ward* v. *Crotty*, 4 Met. Ky. 59; *Livingston* v. *Livingston*, 2 Johns. Ch. 237; *Fitch* v. *Ayer*, 2 Conn. 143; *Cornwall* v. *Hoyt*, 7 Conn. 420; *Whittlesey* v. *McMahon*, 10 Conn. 137; *Morgan* v. *The Thames Bank*, 14 Conn. 99; *The F. E. Society* v. *Mather*, 15 Conn. 587; *Winton* v. *Barnum*, 19 Conn. 171; *Hawley* v. *Burgess*, 22 Conn. 284; *Edwards* v. *Sheridan*, 24 Conn. 165.

From the foregoing authorities the following propositions are fairly deducible:

First. None of the disabilities imposed upon married women have attached to the condition of a married man, who is as free to receive the title to property and dispose of it after marriage as before, except that he cannot by his conveyance affect the inchoate right of his wife to his real estate.

Second. That a conveyance from a husband directly to his wife, without the intervention of a trustee, is void at law.

Third. That a direct conveyance from a husband to his wife will be sustained and upheld in equity in either of the following cases, namely: 1. Where the consideration of the transfer is a separate interest of the wife, yielded up by her for the husband's benefit or that of their family, or which has been appropriated by him to his uses. 2. Where the husband is in a situation to make a gift to his wife, and distintly separates the property given from the mass of his property, and sets it apart to the separate, sole, and exclusive use of his wife.

Fourth. Where a wife advances money to her husband, or the husband is indebted to the wife upon any valid con-

sideration, the wife stands as the creditor of her husband, and if the conveyance is made to pay or secure such liability, the wife will hold the property free from the claims of other creditors, where the transaction is unaffected by unfairness or fraud.

Fifth. Whenever a contract would be good at law when made with trustees for the wife, that contract will be sustained in equity, when made with each other, without the intervention of trustees.

Sixth. That prior to the recent legislation in this State authorizing married women to hold real estate to their separate use when a conveyance was made by a stranger to a married woman, or to a trustee for her, in order to give her a separate use in the property, it was necessary that such conveyance should contain words clearly indicating such intention; but such words were unnecessary in a conveyance from a husband to his wife, for the law presumed that it was intended for her separate and exclusive use.

Seventh. That section five of an act entitled "an act touching the marriage relation and liabilities incident thereto" (approved May 31st, 1852) made all property held by a married woman at the time of her marriage, or acquired by her subsequently, hers absolutely, and has enabled her to use, enjoy, and control the same independently of her husband and as her separate property; and that since the passage of that act a conveyance to a married woman need not contain words indicating that she is to hold the property to her separate use.

Eighth. That when conveyances from a husband to his wife have not been sustained in equity, it has been on account of some feature in them impeaching their fairness and certainty, as that they were not in the nature of a provision for the wife, or when they interfered with the rights of creditors, or when the property given or granted had not been distinctly separated from the mass of the husband's property.

Ninth. That in consequence of the absolute power which a man possesses over his own property, he may make any

disposition of it which does not interfere with the existing rights of others.

Tenth.  When a husband is free from debt and has no children, and conveys property to his wife for a nominal consideration, the law will presume that it was intended as a provision for his wife.

Eleventh.  That a conveyance from a husband to his wife which is good in equity vests the title to the property conveyed in the wife, as fully, completely, and absolutely as though the deed had been made by a stranger upon a valuable consideration moving from the wife.

It appears by the record in this case that the grantor was possessed of a large property; that in his will he disposed of about eight thousand dollars in specific legacies; that the value of the property disposed of in the residuary clause is not shown; that he had no children, and if he had died intestate his wife would have inherited his entire estate; that the rights of creditors were not interfered with by the conveyance in question; that the great and commendable anxiety displayed in his will for the welfare, comfort, and happiness of his wife tends to show that the conveyance which he had made a short time before was intended as a provision for his wife; and that in making his will he had such conveyance in his mind, and did not intend to devise to his brothers and sisters the property which he had previously conveyed to his wife.

We are clearly of the opinion that the conveyance in question was good in equity and should be sustained.  The court committed no error in sustaining the demurrer to the complaint.

The judgment is affirmed, with costs.

*J. N. Sims* and *M. Bell,* for appellants.

*W. L. McConnell,* for appellee.