[Filed April 2, 1889.]

# MARY E. MILLER, APPELLANT, v. C. S. MILLER ET AL., RESPONDENTS.

THE RULE THAT THE INTENTION OF THE PARTIES to a deed of conveyance must be ascertained from the terms of the instrument and the circumstances surrounding the transaction applies to the case of a deed executed by a husband to his wife prior to the adoption of the statute enabling husbands and wives to convey real property from one to the other, and hence it is incompetent for the husband, after executing to his wife an absolute deed in form to such property, to testify in direct terms what he intended by it.

A DEED FROM A HUSBAND TO HIS WIFE was a nullity at common law, upon the ground that it regarded them as but one person; but equity regarded them for many purposes as a duality, and enforced such deeds, when intended by the husband as a provision or settlement in favor of the wife, where the rights of creditors were not affected thereby, and the conveyance in other respects was fair and just. Nor was it necessary, in order to uphold such a deed, that it should be a formal deed of settlement; the presumption was, where the conveyance was by an ordinary deed, that it was intended as an advancement and provision for the wife.

THE LAW ATTACHES TO ABSOLUTE DEEDS AND TRANSFERS a full alienation of the entire interest or property, so far as the alienation is permitted by the principles of law or equity.

IT WAS NOT NECESSARY, in order to give the wife a separate use in the property, that the conveyance from the husband to her should contain words indicating such intention, for the law presumed that it was intended for her separate and exclusive use.

WHERE C. S. M. EXECUTED TO HIS WIFE, M. E. M., a deed of conveyance to certain real property, and the deed purported to be in consideration of the receipt of one dollar, and in compliance with a certain promise and agreement theretofore made, and contained an *habendum* clause to the effect that she was to *have* and *hold* the property to herself and her heirs and assigns forever: *held*, that he was precluded from claiming — without alleging fraud or mistake — that there was no consideration for the deed; *held further*, that the deed created in equity a trust in the premises in favor of the wife. But as the facts and circumstances showed that it was evidently intended as a provision for the wife and their children, which he was also expected to enjoy; and the evidence in the case strongly indicating that the wife had not remained faithful to her husband; that her affections for him had become alienated, resulting finally in a dissolution of the marriage ties between them: *held*, that equity ought not to aid her in the enforcement of the trust, where the court was not satisfied that it was created for a valuable consideration, except as to a certain class of

debts incurred by the wife for the support of the family, and in making permanent improvements upon the premises which she had attempted to charge upon the property.

APPEAL from the Circuit Court for the county of Wasco.

*W. Lair Hill* and *F. P. Mays*, for Appellant.

*Bennett & Wilson*, for Respondents.

THAYER, C. J.—The appellant and the respondent C. S. Miller were formerly husband and wife; they maintained that relation many years, and reared a family of children. In 1874 they lived in Idaho Territory, where they had been living as husband and wife for some time.

On the thirtieth day of June, 1874, said respondent executed to the appellant a deed, purporting to convey to the latter certain real property situated in said county of Wasco, Oregon, consisting of a farm and fruit orchard, and known as the Graham property, including also a certain toll-bridge across the Deschutes River.

The deed was in the ordinary form of a deed of bargain and sale. The language of its premises is as follows: "This indenture witnesseth: That I, Charles S. Miller, for the consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, and in compliance with a certain promise and agreement made on the twenty-fifth day of April, A. D. 1874, have bargained and sold, and by these presents do bargain, sell, and convey, unto Mary Elizabeth Miller, my wife, the following described premises," etc.

The *habendum* clause in the deed was in the usual form: "To have and to hold the said premises, with their appurtenances, unto the said M. E. Miller, and to her heirs and assigns forever."

It appears that after the execution of the instrument the said appellant and her children resided upon the

premises, and that the said respondent made them his home for the next six or seven years after it was executed, but he was engaged in mining enterprises, which occasioned his absence from there a great part of the time. It seems that the deed was not put upon record until the ninth day of May, 1877, at which date said respondent delivered it to the clerk of the county of Wasco to be recorded.

It further appears that said parties were divorced in April, 1885, and that afterwards, and on the twentieth day of February, 1886, in an action in the said circuit court, brought by the said respondent against the appellant, the respondent obtained a judgment for the possession of the said real property; that thereupon the appellant commenced an action in said circuit court against the respondent herein, to enjoin the respondent Miller from enforcing execution of said judgment, and to declare certain deeds executed by said respondent to the other respondents severally void, alleging in her complaint that prior to the time of the execution of the said deed of 1874, she and the said respondent Miller made an agreement with each other to the effect that said respondent should convey to her the property described in the said deed, and certain other property, in consideration that she would cancel and satisfy an indebtment of four thousand five hundred dollars owed by him to her; that she would let him have the additional sum of three hundred dollars; and that she would provide a comfortable home and support for his mother during her life, if the mother should survive him; that in pursuance of and in compliance with the said promise and agreement the said respondent Miller executed to the appellant the said deed of June 30, 1874, and the appellant on her part canceled said indebtment of four thousand five hundred dollars; that it was intended and understood by both parties at the time that said deed vested the title and all legal rights in said prop-

erty, including the premises in controversy, absolutely in the appellant as her separate property; that under and by virtue of said conveyance, with the consent and by the direction of the said respondent, the appellant immediately thereafter took possession of the property, and assumed the exclusive control and management thereof, which possession she held without interruption until July 11, 1885; that appellant, after taking possession of the premises, paid said respondent, partly in cash and partly in property, the remaining eight hundred dollars, as she had agreed to do; that during the time she was in possession of the premises she was compelled to and did expend large sums of her own money in building, repairing, and keeping up the improvements thereon and appurtenances thereto, and in managing the same and preventing waste thereof, all of which was done with the knowledge and approval of said respondent; that subsequently to the execution of said conveyance the said respondent failed and neglected to provide for the support and maintenance of appellant and the five children of her and him, and she, having no means of support, contracted indebtment to Z. F. Moody, for moneys and merchandise furnished by said Moody to her, with which to support herself and children, in the sum of three thousand dollars, most of which indebtment was so contracted while said respondent was absent from his family, and that to secure payment of said indebtment she executed to Moody a mortgage upon the premises on September 10, 1884, which mortgage was duly recorded and remains yet unpaid.

The appellant alleged also in her complaint that, in paying off, at the request of said respondent, certain debts contracted by him to divers persons, and certain obligations contracted by him in her name without her knowledge, and in replacing fences and the bridge on

the premises, she became indebted to William Grant for moneys advanced by him to her in the sum of $4,143.69, and being pressed by him for payment thereof, she confessed judgment for said sum in his favor on February 9, 1885, in said circuit court, which was duly docketed, and is a lien on the premises; that on July 11, 1885, she executed to Paul F. Mohr a deed conveying to him the premises; that Mohr held possession thereof until March 3, 1886, when he reconveyed them to her, since which time she had been in the exclusive possession thereof.

The respondents, after denying some of the said allegations absolutely, and others qualifiedly, set up as a further defense the following matter: "That the deed of conveyance from the said respondent to the appellant alleged in her complaint was intended to be and was a deed of trust, and was made, executed, and delivered to the appellant upon the understanding and agreement that she should faithfully hold the same, without placing any encumbrance thereon, in trust for the said respondent and his children, according to his direction; that appellant, in violation of said trust, and of her agreement in relation thereto, had executed and delivered mortgages upon said premises, and had attempted to sell the same, and had squandered the income therefrom, and that she now desired to have the legal title thereto vested in her, that she might sell the same and apply the proceeds thereof to her own use and benefit, in violation of the aforesaid trust."

The case was heard upon the said issues, and the depositions and proofs of the respective parties taken therein, and the circuit court thereupon decreed the dismissal of the complaint, from which decree the said appeal has been taken.

The main point of contention between the parties was

in regard to the real object of the execution of the deed by the respondent C. S. Miller to the appellant.

The appellant's counsel does not claim that the deed passed the legal title from the grantor to the grantee, but he insists that the transaction was intended to be a sale of the premises by the former to the latter for a valuable consideration, and that a court of equity should enforce its consummation.

The respondents' counsel, on the other hand, denies that there was any consideration for the conveyance, and contends that the circumstances of the affair show that the said respondent did not intend to convey to the appellant any beneficial interest in the premises.

A mass of testimony was taken in the suit, but the part thereof which bears upon the said issue is so conflicting and unsatisfactory that it is difficult to determine what the real consideration of the deed was.

The deed recites as a consideration, as before mentioned, the payment of one dollar, and the compliance with a certain promise and agreement made on the twenty-fifth day of April, 1874. The acknowledgment of the receipt of one dollar is evidently a mere formality; but it is highly important to ascertain what the promise and agreement was, as that undoubtedly was the moving clause of the execution of the instrument. The appellant in her complaint alleged, in effect, that it was a promise to convey to her the premises, upon her agreement to cancel and satisfy the indebtment owed to her by said respondent, to advance to him an additional sum, and to provide a home and support for his mother.

These allegations, whether true or not, were consistent with the recital.

The respondents' allegations in their answers were, that the deed was intended to be a deed of trust, and was delivered to appellant upon the understanding and agree-

ment that she would faithfully hold the same, without placing any encumbrances thereon, in trust for said respondent and his children, according to his direction.

It does not appear from the answer when this "understanding" was had, or the "agreement" was made, nor whether any understanding was had or agreement made at any time distinct from the time of the execution of the deed. And the testimony of the said respondent in his deposition was equally vague and uncertain.

He stated, in answer to an interrogatory as to what the said agreement was, as follows: " The agreement was that she was to keep it out of debt, and hold it subject to my direction and disposal." But he avoids both in his allegations and testimony, stating what *the certain promise and agreement* was made on the twenty-fifth day of April, 1874, which he, *in order to comply with,* on the thirtieth day of June, 1874, bargained and sold the premises to the appellant.

The recital in the deed implies that he executed it in order to fulfill an obligation he was under to the appellant. He certainly did not execute it in compliance with a promise and agreement made by her; it was evidently his own promise and agreement that he was endeavoring to comply with. In view of the said recital in the deed, the allegations in the answer and the testimony of C. S. Miller, the respondents' counsel must necessarily claim that the said promise and agreeement, made on the twenty-fifth day of April, 1874, was to the effect that Miller would deed to his wife the premises in dispute, in consideration of her agreement that she would faithfully hold the same in trust for him and his children according to his direction, and not place any encumbrance thereon, and that the deed was subsequently executed in compliance with such promise and agreement. The main issue between the parties therefore is, whether the said promise and

agreement is as claimed by the appellant, or is as claimed by the respondents.

The respondents' counsel contended with great earnestness that the weight of evidence did not show that the deed was executed to the appellant for a money consideration, and he was so far successful in his efforts in that particular that I should be exceedingly loth to hold that any consideration was given therefor, as claimed by the appellant; but on the other hand, he was not successful in showing that the deed was executed in accordance with the agreement, and for the purposes claimed by the respondents.

It appears to me that the court will not be obliged to go outside of the claim of either party regarding the facts of the case, in order to ascertain the purpose and intent of the deed. It does not seem possible that C. S. Miller executed it as a mere matter of form, or, as he testified, that it was not intended to transfer the beneficial interest in the property, and that the real ownership of it was to remain in him as before.

In view of the character and terms of the instrument, and of the facts and circumstances surrounding the transaction, he stultifies himself by such a pretense.

He had said, under his hand and seal, that he bargained, sold, and conveyed the premises to the appellant, to have and to hold unto herself and to her heirs and assigns forever; had acknowledged before an officer of the law that he executed the instrument for the uses and purposes therein mentioned; and had delivered it to and it had been accepted by the appellant. How can the said respondent, therefore, be heard to say that the deed was intended to convey a "fictitious title," "a title of convenience that he could direct"?

The intentions of the parties to such a transaction must be gathered from their acts and deeds, and not

from what one of them may afterwards say it was. At the time the deed was executed, the parties were living at Silver City, Idaho, which was in a mining district. Miller was operating in mines, engaged, as he himself says, in a risky business. His family, consisting of his wife and five children, were dependent upon him for support. He was evidently an enthusiast upon the subject of mines, —expected to acquire a fortune therefrom, though conscious that failure was possible. Why should he not, therefore, under such circumstances, settle the property in controversy upon his wife, and thereby secure a permanent home for his family and a haven of refuge for himself, in event of shipwreck upon the treacherous sea of mining schemes and speculations?

The course which the parties pursued after the execution of the deed clearly evinces that the object and purpose were to invest the appellant with ownership of the property. The family moved onto the premises soon after, and Mrs. Miller took the whole charge of them. She managed the farm, bought and sold stock, cultivated fruit, and kept the toll-bridge, while her husband divided the main part of his time between Idaho, San Francisco, and New York City. He admits that she conducted the business appertaining to the premises, but claims that she was acting as his agent in the affair. Witnesses testified that he stated on several occasions that the property belonged to her. He told George H. Durham, Esq., in 1877, that the Deschutes bridge property belonged to his wife, and he told Dow, a nurseryman residing at The Dalles, in a conversation had with him in 1878, that she was the sole owner of the property. His own testimony, taken altogether and fairly construed, shows that he considered that he had conveyed the property to her.

In his deposition he was asked the following questions, and gave the following answers thereto:—

"Q. Then the deed was not intended to create a trust, but was merely intended to place the property out of reach, as you supposed, of any possible creditors you might have afterwards?"  "A. It was intended as a deed of trust. When I made it, I thought it was a good deed, and Mrs. Miller was to hold it in trust, subject to my direction."

"Q. Then it was intended by you to convey something more than the nominal title?"  "A. I did not so consider it as between her and myself.  I had confidence in her as my trustee at that time."

"Q. Why did not the deed recite that it was intended to create a trust?"  "A. I wrote this deed myself; did not advise with an attorney or anybody about it; *but I trusted in my wife,* and did not consider the legal points about it."

If Miller considered the deed a deed of trust, and had confidence in his wife as his trustee, he must have supposed that he was conveying some interest or estate in the premises to her; otherwise, there would be nothing upon which the trust could operate, nor any reason for reposing confidence in her.  But a trust cannot be proven in that way, conceding that one could be shown in such a case, notwithstanding the absolute terms of the deed.  It must be shown by proofs of the facts and circumstances occurring at the time of the transaction.  In order to prove such a trust as claimed by Miller,—if susceptible of proof by parol testimony,— he should have shown what was said and done by the parties to the deed at the time of its execution.  His testimony upon that point is in the nature of inference more than of fact.

The respondents' counsel seemed to rely as a defense to the suit upon the fact that the deed did not pass the legal title, and that the conveyance was not such a one as equity will enforce.  He claims that it is not enough for the appellant to show that the deed was actually executed, but

that she must go further and show that there was some equitable consideration therefor, and that the beneficial interest was intended to be conveyed thereby.

Deeds between husband and wife were regarded at common law as nullities, upon the ground that the parties were but one person. Equity, however, considered them for many purposes as a duality, and sustained deeds and bond executed by one to the other which were not valid in law But courts of equity, in the establishment of the doctrine, as in other cases of seeming encroachment upon the rules of the common law, have advanced by slow and cautious steps, though I cannot see why they should not have held, since estates to uses were recognized by law, that a deed to real property, made by a husband directly to his wife, was as effectual to convey to her the use of the property as if made to a third person for her use. Had Miller executed the deed in question to Jones, in trust and for the use of Mrs. Miller, no question would arise as to the rights and interest of the latter in the property as between the parties, and in my opinion the courts more recently are inclined to take that view of the law. The only difference I can discover between the two cases is, that in the one, Jones would be the trustee of the legal title for Mrs. Miller, and in the other, Miller himself would be the trustee thereof for her.

In *Jones* v. *Clifton*, 101 U. S. 225, the court held that the intervention of trustees, in order that the property conveyed by a husband to his wife might be held as her separate estate, beyond his control or interference, though formerly held to be indispensable, was no longer required. Justice Field, in delivering the opinion of the court in that case, at page 227 uses the following language: —

"The right of a husband to settle a portion of his property upon his wife, and thus provide against the vicissitudes of fortune, when this can be done without impairing

existing claims of creditors, is indisputable. Its exercise is upheld by the courts as tending not only to the future comfort and support of the wife, but also, through her, to the support and education of any children of the marriage."

And after referring to the case of *Sexton* v. *Wheaton*, 8 Wheat. 229, the learned judge at page 228 proceeds: "That case does not differ in principle from the one before us. The husband in this as in that one was free from debt when he made the deeds, which were voluntary settlements upon his wife. It cannot make any substantial difference that in the case cited the money of the husband was expended in the purchase of the property, and the conveyance was taken in the name of the wife; and that in the present case the property was owned at the time by the husband, and was transferred directly by him to her. The transaction in its essential features would have been the same as now if the husband had sold his lands and invested the proceeds in other property, and taken a conveyance in her name. The circuity of the proceedings would not have altered its character, nor affected its validity. In all cases where a husband makes a voluntary settlement of any portion of his property for the benefit of others who stand in such a relation to him as to create an obligation, legal or moral, to provide for them, as in the case of a wife or children or parents, the only question that can properly be asked is, Does such a disposition of the property deprive others of any existing claim to it? If it does not, no one can complain if the transfer be made matter of public record, and not be designed as a scheme to defraud future creditors. And it cannot make any difference through what channels the property passes to the party to be benefited, or to his or her trustees, — whether it be by direct conveyance from the husband, or through the intervention of others."

I may not understand the position of the respondents' counsel in claiming that the appellant must show an equi-. table consideration for the deed, and that the beneficial · interest in the premises was intended to be conveyed thereby; but if he claims that she must show that her husband owed her some special duty, making it incumbent on him to deed her the property, and show *dehors* the deed such intention, I will be unable to agree with him. Nor do I understand the case resolves itself down to the simple question whether or not the appellant has shown satis- factorily that the transaction between her and Miller was an actual purchase of the property for five thousand three hundred dollars, as claimed by her.

The fact that the appellant was the wife of Miller at the time he executed the deed to her, and the mother of his children, whom she had the care and control of, was a sufficient consideration for the deed, if intended as a pro- vision for her. (*Moore* v. *Page*, 111 U. S. 117, and the authorities there cited.) And it is not necessary that the deed should be a formal deed of settlement.

Where the conveyance is by an ordinary deed, and not by a formal deed of settlement, the presumption is, that it was made by way of advancement and provision for the wife. (*Wilder* v. *Brooks*, 10 Minn. 55; citing *Whitten* v. *Whitten*, 3 Cush. 197.)

In *Deming* v. *Williams*, 26 Conn. 229, the court, Ells- worth, J., in considering the validity of a gift of shares of stock by a husband to a wife, says: "As to the fourteen shares purchased by Mr. Cowles, he never took a title to them himself, but had them at once transferred by the vendor into the name of his wife. Now, had such trans- fers been made by a parent into the name of a child, the child would acquire the interest as an advancement, such intent being inferred by law from the relationship of the parties. The same is true in case of the wife, where the

husband purchases land and has the deed made directly to her, there being in the case no creditors and no fraud upon any other party. The law attaches to absolute deeds, and transfers a full alienation of the entire interest or property, so far as the alienation is permitted by the principles of law or equity. Such are all the gifts or deeds by husbands to wives of real or personal estate found in the books, from the case of *Slanning* v. *Style* (decided in 1734, and found in 3 P. Wms. 334) to the present time, and they are exceedingly numerous. They sustain the principle that, so far as the form and substance of the gift or alienation are important, that which would be good if made to a third person is good in a court of equity if made by the husband to his wife."

In *Simms* v. *Ricketts*, 35 Ind. 181, it was held that prior to the recent legislation in that state authorizing married women to hold real estate to their separate use, when a conveyance was made by a stranger to a married woman, or to a trustee for her, it was necessary, in order to give her a separate use in the property, that such conveyance should contain words clearly indicating such intention, but that such words were unnecessary in a conveyance from a husband to his wife, for the law presumed that it was intended for her separate and exclusive use. The court also further held in that case that conveyances from a husband to his wife are not sustained in equity if there is some feature in them impeaching their fairness, and certainly as that they are not in the nature of a provision for the wife, nor where they interfere with the rights of creditors, or when the property given or granted is not distinctly separated from the mass of the husband's property.

In the above case, the deed was executed in the state of Pennsylvania to lands situated in Indiana, and purported to be in consideration of the sum of one dollar. In *Dale*

v. *Lincoln*, 62 Ill. 22, a similar case, the deed purported
to be in consideration of one dollar; and in *Crooks* v.
*Crooks*, 34 Ohio St. 610, also a similar case, the deed
purported to be in consideration of five dollars; yet in
each of these cases it was held that the deed was sustain-
able in equity, on the ground that it was intended as a
suitable provision for the wife, although such fact did
not appear in the deed itself.   In *Simms* v. *Rickets, supra*,
the court, at page 185, indulges in some very wholesome
remarks when it says that "it is important that some fixed
and definite rules should be established, by which we are
to be governed in the decision of such cases, as it is not
safe to leave such questions to the mere discretion of the
court, for in such case the peculiar views or prejudices of
the judge would determine the rights of parties."

The best rule upon the subject that can be adopted,
where the contention is entirely between the husband
and the wife, would, in my judgment, be to hold that
the parties were bound by the terms of the deed; and
where its terms are absolute, that it conveyed "the entire
interest or property" to the grantee, "so far as the aliena-
tion is permitted by the principles of law or equity," which,
prior to the late statutes authorizing husband and wife to
deed real property directly to each other, would be a right
in equity to the use of the property.   This, it seems to me,
is the only rational rule on the subject.   Where, however,
the rights of creditors or other parties are involved, the
rule is different.

Then it is necessary to show that the deed was in-
tended as a settlement, and that the property conveyed
or set apart to the wife was no more than a reasonable
provision for her support.   To allow the grantor, in such
a case, in order to render the deed ineffectual, to come in
and swear that he did not mean what he had said under
his hand and seal, or to claim that the deed intended

something different from what its terms implied, is a violation of the established rules of evidence. How could the appellant in this case show by any more cogent proof that the beneficial interest in the premises was intended to be conveyed to her than by the deed itself? She was not certainly required to strengthen it by testimony that Miller made oral declarations at the time the deed was executed to the effect that she was to have such interest, as she had already his solemn acknowledgment to an instrument signed and sealed by him, "granting the premises with their appurtenances unto her and her heirs and assigns forever." Nor can Miller claim that there was no consideration for his execution of the instrument. His acknowledgment of the nominal consideration, and that he executed it in compliance with a certain promise and agreement theretofore made, preclude him from making such claim without alleging fraud or mistake. Whether the consideration was the thousand dollars earned by Mrs. Miller in keeping boarders in the Flint mining district, from June, 1870 to 1871; the thousand dollars she claimed he realized upon the sale of the mining stock which had been given to her; the eight hundred dollars for the bay team and outfit bought by her in 1872, with money she had before their marriage; the five hundred dollars she claimed he realized in raffling off some of her personal effects; the twelve-hundred-dollar team and outfit taken by her to Idaho in August, 1874, and turned over to him, which she claims to have bought with her own money; and eight hundred dollars or more she claims to have afterwards advanced to him, — I do not undertake to say; but that there was either a valuable or a good meritorious consideration for his executing the instrument, which created in equity a trust in the premises in favor of the appellant. Whether, however, it was such a trust as a

court of equity ought, in view of all the facts in the case, to enforce, is a very difficult question to decide. The deed evidently was intended as a provision for the wife and children, and it was expected, no doubt, that the husband would also be allowed to enjoy the benefit of the property. The letter written by the wife to the husband, on the tenth day of March, 1879, wherein she says, with much warmth and earnestness: "I am doing my best to put the place in good order, and am willing and wish to turn it over to you when you come home. I never, never,—so help me God!—had a thought of trying to get this property from you, in order to be independent of you, nor for any purpose, save having a home for you, me, and the children, in case of business disaster or failure,"— expresses, in my opinion, the real object and purpose of conveyance. In her deposition she was asked this question: "Where did you live from the time you left Flint district, in 1871, until the spring of 1874?" To which she gave the following answer: "I had no home,—but lived in Wasco County, Oregon, and Owyhee County, Idaho Territory, and between the points, traveling." This answer reveals the secret to the execution of the deed. She was weary of a nomadic life, and while her husband was pursuing a kind of *ignis-fatuus*, as he seems to have been, she could never expect to have a home; hence the property in question was settled upon her. And if she had remained a faithful wife, a court of equity would not have permitted her to be disturbed in the enjoyment of it. The testimony, however, shows circumstances of an unfavorable character against her. Her affections for her husband became alienated, and the ties of marriage between them were finally dissolved.

Under such circumstances, it seems to me equity ought not to aid her in the enforcement of the trust, unless the court were satisfied that it was created for a valuable consideration.

But there is another feature in the case which should be considered. Long before the parties separated, the appellant created indebtedness which she attempted to charge upon the property. This indebtedness is alleged to have been incurred in supporting the family, and in keeping the premises in repair; it is principally, if not entirely, due to Z. F. Moody and William Grant. Miller denies any knowledge concerning it; but he knew that she was supporting the family, was keeping up the premises, and was liable to become indebted therefor. He knew that she had contracted debts in several instances; he signed her name himself to a promissory note for a thousand dollars. He allowed her to represent the premises as the owner thereof; and it was shown that he said on several occasions that she did own them.

In view of these facts, she ought to be indemnified against liability on account of such debts, where they have been created for the purposes of supporting the family, or for making permanent improvements upon the premises, and the parties to whom they were due be secured in their payment. The appellant had such an interest in the property as would enable her to create a lien thereon; but the lien will be unavailing unless the trust is enforced, at least *pro tanto.* It will therefore be likely to operate unjustly to the appellant, and to her creditors who have parted with their merchandise and money upon the faith of her being the absolute owner of the property, if Miller is now allowed to fully assert the legal title thereto which remains in him. Under the circumstances, I think the appellant, as between Miller and those claiming under him since the execution of the deed to her, and her creditors to whom such indebtedness is due, should be deemed such an owner of the property as will subject it to the payment of debts of the character referred to, according to their priority of record; but

before said property is applied to the payment of any debts, the parties claiming them should be required to show by a preponderance of evidence that they were created for the purpose of supporting Miller's family, or making permanent improvements upon the premises in question. The facts as to whether the debts claimed, or any part thereof, were created for the purposes mentioned, can be ascertained when an attempt is made to enforce them; nor in case of a mortgage by a suit to cancel it; and in case of a judgment, by a motion to restrict the lien thereof to the proper amount in accordance with the rule here laid down.

Courts have a control over their judgments, and authority to adjust the rights of parties to them upon motion.

A decree should be entered herein in accordance with the principles of this opinion. Neither party will be entitled to recover costs; and each will be required to pay one half of the clerk's fees of the clerk of this court herein.

LORD, J., did not take part in the decision of this case, on account of sickness at the time of its hearing.