JANE TULLIS, by her next friend, MORRIS LAMPREY, Appellant,
vs. ABRAM M. FRIDLEY, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

A gift from a husband to his wife of a promissory note directly, and without
the intervention of trustees, although a nullity at law, will be recognized and
enforced in equity as against the maker of the note and the husband, where the ·
rights of creditors are not prejudiced thereby.

Points and authorities for Appellant.

I. Our statute enables a married woman to take, hold and own
any property, real or personal, to which she may become entitled
by gift, grant or devise from any source at any time after her
marriage to the same extent as before marriage.  *Comp. Sts.*,
*p.* 571, *sec.* 105.

II. Gifts and transfers of property from the husband to the
wife may be supported as her separate property, if they be not
prejudicial to creditors, even without the intervention of trustees and
as an advancement.   In equity an absolute conveyance of personal
property from a husband directly to his wife is sufficient, so far as
form is concerned, to divest the husband of such property, and to
vest the same in the wife, and the wife takes a sole and separate
estate in as full a manner as a third person would do.

And though a conveyance from a stranger to a *femme covert*,
in order to vest in her a sole and separate estate, must contain
words indicating such an intention, such words are unnecessary
in a transfer from a husband to his wife.   A voluntary post nup-
tial settlement made by the husband upon his wife is valid, if the
husband be not indebted at the time, and it be not disproportion-
ate to his means.   2 *Kent's Com.*, *marg. p.* 163, *et seq.;* *Story's
Equity*, secs. 1375, 1380; 4 *Mason's C. C. Reps.*, 443, *and cases
cited;* 26 *Conn. Reps.*, 226 ; 3 *John. Ch. Reps.*, 481 ; 8 *Wheaton's*

Tullis v. Fridley.

*Reps.*, 229; 3 *Edw. Ch. Reps.*, 92; 3 *P. Williams*, 334; 1 *Atk.*, 270; 5 *Ves.*, 79; 1 *Swanst.*, 106; 17 *Mass.*, 57; 20 *Pick.*, 556; 5 *Met.*, 280; 2 *Story's Eq.*, sec. 1204; 2 *John. Ch.*, 537; 7 *Id.*, 57; 9 *Geo.*, 223; 34 *Minn*, 540.

Points and authorities for Respondent.

I. At common law husband and wife cannot contract one with the other.

II. Our statute on the rights of married women has not gone far enough to allow such contracts.

III. The cases in which certain contracts between husband and wife have been sustained were cases in equity where all the facts necessary to the granting of such relief have appeared affirmatively.

IV. The decisions on the subject in the State of Maine were based upon special statute. 35 *Maine*, 427.

MORRIS LAMPREY, Counsel for Appellant.

D. A. SECOMBE, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—I discover that the complaint in this action does not present the question upon which it is demurred to, and upon which the demurrer was argued. It is alleged that the Plaintiff is the wife of Aaron W. Tullis. That the Defendant made the note to " one A. W. Tullis," who transferred it to the Plaintiff—it nowhere appearing that the "A. W. Tullis" to whom the note was executed is the Aaron W. Tullis who is the husband of the Plaintiff. But as the parties undoubtedly desire the question decided, we will examine it.

Can a married woman receive a gift of a promissory note from her husband, so as to vest title to it in her by mere delivery without the intervention of trustees? The question is presented here by way of demurrer to a complaint in an action brought by a married woman on a note given to her directly by her husband,

and the point is, is she the real party in interest? The objection is made by the maker of the note, and is consequently disembarrassed of all questions of the rights of creditors or any one else.

The statute defining the rights of married women to their separate property in this State is on *page* 571 *of the Comp. Sts., at section* 106. On a careful reading of that law we do not think it changes the manner in which property may be acquired by a married woman—it simply changes the common law as to the rights of the wife, the husband, and the husband's creditors in any such property that may accrue to the wife. There is another act of our legislature (*Laws of* 1860, *ch.* 49, *p.* 217,) which confers the most extended privileges on married women under special circumstances, but as this case does not disclose any of the special features of that act it throws no light upon the question. We think it is safe to say that at law such a transaction would be a nullity. If the wife's title to this note is to be upheld and enforced in her favor we must find the power in equity.

A good many cases have arisen where such transactions have been upheld in equity in favor of the wife. They generally arise, however, between creditors, heirs at law, or personal representatives of the husband and the wife. I cannot find any case where the obligor has defended an action upon this question, which may probably be accounted for on the difference in practice formerly existing as to parties Plaintiff in personal actions.

In the case of *Hornning vs. Style*, 3 *P. Williams*, 335, a husband allowed his wife for her separate use to make profit of all butter, eggs, pigs, poultry, &c., on his farm beyond what was used in the family, by which means she accumulated a sum of money, which the husband borrowed—it was held that the wife was in equity entitled to this money as her own. It was proved that when persons came to the farm to purchase fowls, pigs, &c., the husband would say he had nothing to do with those things, which were his wife's. The Lord Chancellor remarked, in upholding the wife's claim, that it seemed but a reasonable encouragement to her frugality. The court cited in that opinion the case

of *Calmady vs. Calmady*, without reference to the report, where a husband had agreed directly with his wife that upon every renewal of a lease by the husband, two guineas should be paid by the tenant to the wife, which was allowed to be her separate money.

In the case of *Lucas vs. Lucas*, 1 *Atkyns' Reports*, 270, the testator had made a marriage contract between himself on one part and Holmes and his intended wife on the other, by which he agreed to divide his personal estate on his death between his widow, his daughter by a former marriage, and his children by the contemplated marriage, should there be any, in thirds. The provision for the widow to be in full of dower, Holmes was to pay him two thousand pounds. During his life time he gave his wife one thousand pounds South Sea annuities, by transfer directly to her. It was proved that he had declared by word of mouth that she should hold and enjoy them to her own use. That he at one time instructed an attorney to draw a deed to declare them to her use, who vested them in trustees, to transfer them to her, but that the testator, on information that it would be better, transferred them directly to her. The widow claimed them. The court would not allow this transfer to influence any of the estate bound by the marriage articles, but held it good against the testator, remarking, "In this court, gifts between husband and wife have often been supported, though the law does not allow the property to pass. It was so determined in the case of Mrs. Hungerford, and in Lady Cowper's case, before Sir Joseph Jekyll, where gifts from Lord Cowper, in his life time, were supported and reckoned by this court as part of the personal estate of Lady Cowper."

In the case of *Beard vs. Beard*, 3 *Atk.*, 72, the husband got angry with his wife, and made a will leaving all his estate to his brother. He then became reconciled, and made a deed directly to his wife of all his estate. The Lord Chancellor held that the deed was sufficient to revoke the will, but remarked "that it could not take effect as a grant or deed or gift to the wife, because the law will not permit a man to make a grant or conveyance to the

wife in his lifetime. Neither will this court suffer the wife to have the whole of the husband's estate while he is living, for it is not in the nature of a provision, which is all the wife is entitled to." Had it been a reasonable allowance there is every reason to believe it would have been upheld, and so thought the Chancellor in the case of *Shepard vs. Shepard*, 7 *John. Ch. R.*, *p.* 61.

In *Livingston vs. Livingston*, 2 *John. Ch. Rep.*, 538, a parol contract between husband and wife, by which he was to purchase land in her name, and erect thereon a house, for which he was to be reimbursed by sale of her property, was enforced against the heirs at law of the wife, who died before the contract was fully performed. Such a conveyance will, in the first instance, be presumed to be intended as an advancement and provision for the wife, but such presumption may be rebutted by parol proof. The Chancellor in deciding the case says, " a husband and wife may contract for a *bona fide* and valuable consideration for a transfer of property from him to her"—meaning of course in equity.

In *Shepard vs. Shepard*, 7 *John. Ch. R.*, 57, the husband had, before he married the plaintiff, obtained from her a release of dower in lands then owned by him, which would have accrued to her by the marriage. After the marriage he conveyed directly to her a lot of land in consideration of natural affection, and to make provision for her when a widow, to hold during her widowhood. He subsequently conveyed the same land to the defendant, his son. The deed from husband to wife was enforced against the son. The opinion in this case is very well considered. Some of the authorities cited by me above are referred to, and others to which I have not access, to the same effect. The Chancellor says, (*page* 62,) " I conclude accordingly that the deed from the husband to the wife may and ought, in this case, to be aided and enforced by this court. This would seem to be the most safe and effectual relief to her, and it is the one that her husband intended before the alienation of his affections."

The doctrine of these cases is adopted by Judge Story (2 *Story's Eq. Jur.*, *secs.* 1372, 1380.) He refers to them all, and many others. See also *Clancy's Rights of Married Women*, *ch.* 4 *p.*

277—more particularly last clause of chapter on *pp.* 280–1; 2 *Kent's Com.,* 163. " Gifts from the husband to the wife may be supported as her separate property, if they be not prejudicial to creditors even without the intervention of trustees." *Notes b,* 1, *cases cited.*

We think such contracts may be upheld in equity. That when a husband gives property to his wife no ones' rights being interfered with, it becomes her separate estate, and she will be protected in its enjoyment.

The next question is, how can she enforce her claim? The counsel for the Defendant insists that it will not be recognized at law, and that a suit on a promissory note is a suit at law. Since the union in the same tribunal of· the administration of both ' law and equity, forms of action are abolished and all . causes are " commenced, prosecuted, and conducted to final decision and judgment by the like process, pleadings, trial, and proceedings as in civil actions." *Laws of* 1853, *pp.* 19, 20, *sec.* 1. That is, they are commenced by summons, put at issue by complaint, answer and reply, testimony taken in open court, and have no name, such as replevin, trespass on the case, or ejectment at law, or bill for specific performance, or discovery, &c., when in chancery. They are now all civil actions. Yet there is no doubt, and never can be any created by legislation, until they establish particular forms for all pleadings (which would be troublesome), that the same allegations in the pleading which presents the Plaintiff's case, no matter what you may call it, are quite as necessary now as they ever were to attain the same result. If you were compelled to state in your bill certain facts to obtain certain relief in chancery, you must state the same facts in your complaint in the District Court to produce the same result. The principles which heretofore governed the litigation of a question on its merits still obtain. Had the act of 1853 never been passed, where would the Plaintiff have gone to enforce the collection of the note? Not 'to a court of law, for it would not recognize the transfer. If she has a right, she has a remedy. Into a court of equity. Then, what facts would she state there? Simply that she was a married woman, and had

received this note as a gift directly from her husband, which facts alone would be conclusive that she had no adequate remedy at law, as that character of transaction is not recognized at law at all. These facts would establish the equitable jurisdiction, and then such other facts as would make out the Defendant's liability would perfect Plaintiff's case. This complaint states all these facts (or at least we are considering it on that supposition). The case is in a court of equity; does it not follow that the Plaintiff must have judgment?

The note was payable to the order of the Plaintiff's husband, and was transferred to the wife without an indorsement. The Defendant insists that such a transfer to pass title must be supported by a valuable consideration—that natural affection will not do. Perhaps that point might be well taken by a creditor of the husband, or a personal representative after his decease, but not by the husband or the Defendant in this case. Title to the note will pass without indorsement. 2 *Minn. Rep.*, 107.

The order sustaining the demurrer is reversed.