FANNY S. WILDER et al, vs. D. H. BROOKS et al.

A conveyance of real estate by husband to wife will be upheld as a suitable provision for her maintenance when it appears to be a fair transaction, not made in fraud of creditors and not unreasonable in its amount, taking into consideration all the circumstances of the case.

The record of such a conveyance stands upon the same footing as the record of any other conveyance, so far as the question of notice is concerned.

This action was brought in the District Court of Ramsey county to remove an alleged cloud on the title to certain real estate situate in said county, owned by the Plaintiffs, caused by a judgment lien of the Defendants. The cause was tried by said District Court without a jury. The following are the material facts substantially as found by the Court :

On the 30th of September, 1858, one Pease, then the owner of the real estate described in the complaint, duly conveyed the same to one Torbet, by deed, duly recorded on the same day, of which conveyance and record the wife of Torbet had knowledge. Said real estate was purchased with money received by Torbet from his wife in 1856, which she had received from a former husband, and was a part of her separate estate. On the first day of October, 1858, said Torbet executed an instrument directly to his wife, purporting to be a deed of conveyance of said real estate from him to his wife, which was recorded the same day. The Defendant Brooks recovered a judgment against said Torbet, and caused the same to be docketed in said Ramsey county, January 24th, 1859, no part of which has been paid. On the 7th of March, 1859, said Torbet and wife duly conveyed said real estate to Mrs. Harriet J. M. Rohrer, by deed, duly recorded on same day. On the third day of February, 1863, said Harriet and her husband conveyed

the premises to the Plaintiff, (Fanny S. Wilder,) by deed, duly recorded February 6th, 1863.

The following are the conclusions of law upon the foregoing facts :

The deed from Torbet to his wife, dated Oct. 1, 1858, was and is wholly void, and the legal title to the premises remained in the said Torbet, notwithstanding the execution, delivery and recording of the said instrument.  By the docketing of said judgment against Torbet, the same became a legal and valid lien upon his real estate in said county, including the premises in question. The Plaintiffs at the date of the execution of the deed from Rohrer and wife, to Fanny S. Wilder, had constructive notice of the existence of said judgment lien, and of the legal effect of the instrument executed by Torbet to his wife.   The Plaintiffs show no equitable claim to the relief demanded.

It was adjudged by the Court below that the action be dismissed, which judgment was duly entered.

The Plaintiffs appeal to this Court.


VAN ETTEN & OFFICER, for Appellant.


I.—The deed of October 1, 1858, relates to the separate property of Mrs. Torbet, and for the purposes of that deed she is, in equity, regarded as a *femme sole.*   17 *Johns.*, 548 ; 4 *Barb.*, 553.

II.—The Court having found that the premises embraced in the deed of October 1, 1858, were purchased with money given by Mrs. Torbet in 1856, out of her separate estate to A. M. Torbet, the grantor, equity will sustain the deed.  4 *Kent's Commentaries*, 156–166, (8*th Edition*) ; *Shepherd vs. Shepherd,* 7 *Johns. Ch.*, 61 ; 4 *Barb.*, 553 ; 8 *Paige C. R.*, 162 ; 3 *Johns. C. R.*, 524 ; 2 *Id.*, 538 ; *Livingston vs. Livingston,* 7 *Johns. C. R.*, 524 ; *Fonbl. Eq.*, *p.* 97, *note "N."* ; *Reeve's Dom. Rel.*, 90.

III.—It was competent for Torbet to divest himself of the legal title to the premises in question by deed, or a formal declaration of trust, the deed in question having been executed and delivered and recorded prior to Respondents acquiring any lien upon

the premises. If it is invalid as a conveyance of the legal title to Mrs. Torbet, it is valid as a declaration of trust in favor of Mrs. Torbet, she having paid the purchase money therefor out of her separate property.

And this construction of the instrument, or decree of October 1, 1858, does not conflict with Sec. 7, Chap. 32, relating to uses and trusts. (*Comp. Stat.*, 382.)

IV.—The equity of Mrs. Torbet (under the deed of October 1, 1858,) to the premises in question being invoked in this case, it is immaterial who invokes the aid of the Court to sustain her equity. *Vide Wall vs. Kennedy*, 3 *Cow.*, 602.

Lorenzo Allis, for Respondents.

I.—A conveyance of real estate made directly from the husband to the wife, or from the wife to the husband during coverture, is absolutely void. It is no deed. The instrument, therefore, made by Torbet to his wife, October, 1858, was without any effect whatever, and nothing passed by it. This is too well settled to require argument or authority. But see *Chitty on Contracts*, p. 181 [168] *note 1 and authorities cited ;* 2 *Hilliard on Real Prop.*, p. 288, *secs.* 50, 54, *and authorities cited.*

II.—When, therefore, the Respondents docketed their judgment against Torbet, the real estate stood in his name, and he had held the title thereto, since its purchase of Pease, and continued to hold it till its sale to Mrs. Rohrer, March 7th, 1859, although it was purchased with money received by Torbet from his wife's separate estate, some two years previously. It is not pretended that the Respondents before or at the time of the docketing of their judgment or afterwards, prior to the institution of this action, had any knowledge or notice that the property was bought with funds received from the wife's separate estate.

The interest of the Respondents in this real estate, therefore, is a *bona fide* legal one, older than the title of the Appellant.. Hence the Appellant's title is subject to the Respondent's interest in these premises, and the Appellant cannot claim to be relieved from this

prior incumbrance.   The Respondents occupy precisely the same legal position in respect to the Appellant, as though they were *bona fide* purchasers for value of this real estate.   *Comp. Stat.*, (54) *Sec.* 1, *p.* 404.

III.—Whatever equities Mrs. Torbet may have against her husband, and which also she may enforce against these Respondents, it is assuredly unnecessary to remind this Court that the present Appellant cannot invoke and enforce those equities against these Respondents.

1. These equities are in their very nature unassignable.

2. In point of fact, they have never been assigned, or in any wise transferred to the Appellant.

IV.—Finally : The Appellant is not entitled to the relief which she seeks in this action because, by her own showing, she has a plain and adequate remedy at law on the covenants in her deed of conveyance from Rohrer and wife, her immediate grantors.

*By the Court*—BERRY, J.—The determination of this case depends upon the effect to be given to the instrument recited in the finding of the Court below, and running from Andrew M. Torbet to his wife.   No question is made upon the manner of its execution or the sufficiency of its record.   If it conveyed a good title to Mrs. Torbet, we perceive no reason to doubt that Mrs. Wilder, the Appellant, acquired and now possesses a good title to the property in dispute by virtue of the subsequent conveyances.   It nowhere appears that the cause of action upon which the Respondents' judgment was recovered, existed at the time when the instrument above referred to was executed and recorded.   Nor does it appear that at that time Andrew M. Torbet was indebted to any person, nor that he executed the instrument in anticipation of contracting the indebtedness upon which the judgment was based or any other indebtedness.   Again, the instrument of conveyance was executed and placed upon record on the 1st day of October, 1858, while the judgment which the respondents claim to be a lien upon the premises, was rendered on the 16th day of January, 1859, and docketed in the county where the premises are

situated on the 24th day of the same month. Under these circumstances there is no presumption against the transaction between Torbet and his wife, on account of fraud, actual or constructive. *Saxton vs. Wheaton,* 8 *Wheaton,* 429. And had the conveyance been made to any person other than his wife, and even for a merely nominal consideration, we see no reason why it would not have been completely unassailable. If these premises are sound, it follows that if the instrument was effectual between Andrew M. Torbet and his wife to pass the property, it was good as to all the world and *vice versa.* The first question to be encountered is as to the capacity of a wife to take property from her husband by transfer to herself directly. Blackstone says: "By marriage the husband and wife are one person in law. * * * * For this reason a man cannot grant anything to his wife or enter into covenant with her; for the grant would be to suppose her separate existence, and to covenant with her would be only to covenant with himself." 1 *Bl. Com.,* 442; 2 *Kent Com.,* 129. This is unquestionably the rule at law; but in equity it is subject to some exceptions, and these contracts, gifts and conveyances running from husband to wife, directly and without the interposition of trustees or of any third person to serve as a conduit, are sometimes supported unless made in fraud of creditors, &c. *Beard vs. Beard,* 3 *Atk.,* 72; 1 *Fonbl. Eq.,* 97, *note "N," and cases cited;* 2 *St. Eq. Juris., Secs.* 1372–5, 1380; *Shepard vs. Shepard,* 7 *Johns. Ch.,* 57; 2 *Kent's Com.,* 10*th Ed.,* 163, *and notes; Livingston vs. Livingston,* 2 *Johns. Ch.,* 537; 1 *Wash. R. Prop.,* 279, *Sec.* 14; *Whitten vs. Whitten,* 5 *Cushing,* 191; 1 *Lead. Cases Eq.,* 540, 541, 3*d Am. Ed.; Wallingford vs. Allen,* 10 *Peters.,* 594–5; *Sexton vs. Wheaton and wife,* 8 *Wheaton,* 242, 249; *Neufville vs. Thomson,* 3*d Ed., Ch.* 92; *Reeve's Dom. Rel.,* 90; *Tullis vs. Fridley,* 9 *Minn.,* 79; *Sommons vs. McElwain,* 26 *Barb. S. C.,* 419; *Huber vs. Huber,* 10 *Ohio,* 373. It is a matter of almost daily occurrence for a husband to convey land to his wife indirectly, by conveying to some third person, who conveys to the wife directly, and this practice is sanctioned by authority. *Jewell vs. Porter & Ralfe,* 11 *Foster,* 38; *Reeve's Domestic*

*Relations*, 90. Contracts of all kinds, between husband and wife, are objected to not only because they are inconsistent with the common law doctrine that the parties are one person in law, but because they introduce the disturbing influences of bargain and sale into the marriage relation, and induce a separation rather than a unity of interests. But certainly neither in reason nor on principle can it be contended that so far as this objection is concerned, there is any difference between the cases of a conveyance by a husband to trustees for the use of a wife, or to a third person who conveys to the wife, or to the wife directly. Each of these would have precisely the same effect, in conferring upon the wife property and interests independent of and separate from her husband. This separation of interests is quite generally sanctioned by express enactments, and by our own statute. *Pub. St.* 571, *Sec.* 106. And the tendency of modern legislation as well as of judicial interpretation, is to improve and liberalize the marital relation by recognizing and upholding the reasonable rights of both parties to the matrimonial contract. It is stated in note "*B*," *to page* 163, 10*th Ed., Kent's Com.*, that "The English statute of 3 *and* 4, *William IV*, has now given sanction to this doctrine, (referring to the doctrine that gifts from husband to wife are supported without the intervention of trustees as laid down in the text,) and the husband is allowed to make a conveyance to his wife without the intervention of a trustee." This would seem to be in harmony with the rule adopted by the Courts of Equity. *See cases cited in note "B."* Under the authorities before referred to, there can be no doubt that conveyances from husband to wife directly, are sometimes upheld. And postnuptial conveyances, even when voluntary and without consideration, have been repeatedly sustained when the object was to make a settlement upon the wife or a provision for her maintenance and support. 2 *St. Eq. Juris., Sec.* 1374–5 ; 1 *Pars. Con., 5th Ed.*, 370, *and notes ;* 1 *Kent's Com.*, 163, 166. And where the conveyance is by an ordinary deed, and not by a formal deed of settlement, the presumption is that it was made by way of advancement and provision for the wife. *Whitten vs. Whitten*, 5 *Cush.*, 197. The Court

below finds that the property in question was, at the time of its attempted transfer to Mrs. Torbet, the whole estate of her husband, Andrew M. Torbet. Story says: "If a husband grant all his estate or property to his wife, the deed would be held inoperative in equity, as it would in law, for it would in no just sense be deemed a reasonable provision for her (which is all that courts of equity hold the wife entitled to), and in giving her the whole he would surrender all his own interests. But, on the other hand, if the nature and circumstances of the gift or grant, whether it be express or implied, are such that there is no ground to suspect fraud, but it amounts only to a reasonable provision for the wife, it will, though made after coverture, be sustained in equity." 2 *Eq. Juris.*, secs. 1374–5. To the same effect cases referred to in American notes to *White & Tudor's Lead. Cases in Eq.*, 3d *Am.*, *Ed.*, 540. This doctrine is quite commonly referred to by text writers. 1 *Bright on Husband and Wife*, 33. Its origin would seem to be found in a dictum of Lord Hardwicke, in *Beard vs. Beard*, 3 *Atk.*, 72. In that case the husband by deed poll gave to his wife all his substance which he then had or might thereafter have. Lord Hardwicke held that the transaction could not take effect as a grant or deed of gift to the wife, "because the *law* will not permit a man in his lifetime to make a grant or conveyance to the wife, neither will this Court suffer the wife to have the whole of the husband's estate while he is living, for it is not in the nature of a provision, which is all the wife is entitled to." Unless he means that the law, as distinguished from equity, will not uphold a conveyance from husband to wife, he has so far at least been clearly overruled, as we have seen. If, however, it be true that a conveyance of his *whole* estate by husband to wife is inoperative, then the deed in the case before us cannot stand. In the first place it is to be observed that in the case decided by Lord Hardwicke, the transfer was not only of what the husband then had, but of all he might acquire, and it would not necessarily follow from that decision that if the conveyance had been confined to property of which the husband was then owner, it would have been held inoperative and void. That was a somewhat remarka-

ble case, and one in which the result, if the conveyance were supported, might be to reverse the natural and relative position of the parties to the marriage contract, so that the husband, instead of being the head of the family, would be transformed into a "hired man" for his wife. On the other hand, Kent lays down the rule without qualification as follows: "Gifts from the husband to the wife may be supported as her separate property if. they be not prejudicial to creditors." 2 *Com.*, 163. *See also Atherly on Marriage Settlements*, 330. In *Whitten et als. vs. Whitten et als.*, 5 *Cush.*, (*Mass.*,) 191, the husband had given the wife a power of attorney to collect and receive all moneys, &c., due or payable, belonging or coming to him and to her own use. The wife had gone on under the power collecting and making investments in her own name, until she had appropriated to herself the whole of her husband's property. Under these circumstances the Court hold as against the heirs of the husband, that "the legal estate is clearly in her, and' the presumption of law is that it is for her own benefit." *P.* 200. In the case of *Saxton vs. Wheaton and wife*, 8 *Wheaton*, 242, where the validity of a postnuptial voluntary settlement made by a husband upon his wife was in question, Marshall, C. J., says: "It would seem to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition of it, if it be fair and real, will be valid." Speaking of the case before him, he says: "The appellant contends that the house and lot contained in this deed constituted the bulk of Joseph Wheaton's estate, and that the conveyance ought on that account to be deemed fraudulent. * * * If a man entirely unincumbered has a right to make a voluntary settlement of a part of his estate, it is difficult to say how much of it he may settle. In the case of *Stephens vs. Olive*, 2 *Bro. Ch. Reports*, 90, the whole real estate appears to have been settled subject to a mortgage of £500, yet that settlement was sustained." Notwithstanding our statute upon the subject of uses and trusts, we think the fact that the original purchase money of the premises

in litigation, was furnished by Mrs. Torbet out of her separate estate, has a tendency to raise a sort of meritorious consideration for the conveyance from her husband to her, (see 2 *Kent's Com.* 174,) and to establish the reasonableness and equitable standing of the provision made for her, taking into account all the circumstances of the case.

And if it was necessary to say anything further upon the question of reasonableness, so far as appears there is nothing in the amount or value of the property conveyed, consisting as it did of a house and block of lots used as a homestead, going to show that here was any extravagant or inequitable or unsuitable provision for the wife. We have not enlarged upon the fact that the house, and a part of the land upon which it was built, were before the conveyance to her subject to her rights under the homestead law, though we perceive no reason why this circumstance might not properly be taken into consideration.

We uphold the conveyance from Torbet to his wife upon the ground that all the facts considered it appears to have been a fair transaction, to amount to no more than a reasonable provision for the wife's maintenance and support, and because it was not prejudicial to creditors. Farther than this it is not necessary for us to go in this case, though if we went farther we should not be compelled to go alone.

It is claimed by the respondent that whatever right Mrs. Torbet had was but an equity, and so in the absence of actual notice the judgment lien under our statute was paramount. *Pub. Stat.*, 404, *Sec.* 54. Our recording statutes, however, appear to make no distinction between the effect of the record of a conveyance passing a title in law, and of an instrument raising an equity. The term "conveyance" is defined in the statute "to embrace every instrument in writing by which any estate or interest in real estate is created, &c., or by which the title to any real estate may be affected in law or equity," &c. *Pub. Stat.* 405, *Sec.* 63. And all such conveyances seem to be put upon the same footing, so far as the record is made notice.

The judgment below is reversed, and the cause remanded with

instructions to render judgment for the plaintiff conformably to this decision.