# 𝔅ichmonð.

## RIGGAN'S ADMR. V. RIGGAN.

### APRIL 16, 1896.

1. TRUSTS—*Parol agreement—Revocation of trust—Husband to hold wife's property for her—Sections 2413, 2414, and 2840 of Code.*—A valid trust can be created by parol in personality or the proceeds of real estate, and, when once created, it cannot be subsequently altered or revoked by the party creating it, but is governed by the same rules as trusts created in writing. A husband and wife may agree, by parol, that he shall hold for her separate use property acquired by him by virtue of the marriage, and, if the rights of creditors will not be thereby affected, a court of equity will enforce the agreement. If the property is her separate estate by virtue of law, there is a valuable consideration for the agreement; if not, and the agreement is made after marriage, the consideration is meritorious   In the case in judgment there was such an agreement, and it is sufficiently established by proof. Sections 2413, 2414, and 2840 of the Code have no application to the case.

2. SEPARATE ESTATES—*Uncollected choses on April 7, 1877—Act of limitations between Husband and Wife.*—Choses in action of a wife remaining uncollected on or after April 7, 1877, are the separate estate of the wife, though the marriage was previously solemnized, and the husband is liable to the wife therefor if he collects them. The act of limitations on such collections begins to run against the wife from the time that she has knowledge of such collections.

3. POOR DEBTORS EXEMPTION—*Exemption to widow—Sections 3650 and 3653 of Code.*—Under the plain language of section 3653 of the Code, the widow of a man having no children is entitled to have set apart to her, whether the estate of her husband is solvent or not, the articles enumerated in section 3650, and, if the administrator has sold them, she is entitled to their value.

Appeal from a decree of the Circuit Court of Mecklenburg county, pronounced June 8, 1892, in a suit in chancery,

wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Finch & Atkins*, and *Christian & Christian*, for the appellant.

*R. E. Thorp, W. E. Homes*, and *Coke & Pickrell*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Mecklenburg county, and the case presented may be briefly stated as follows:

In 1876 E. H. Riggan, a childless widower, married Harriet B. Sims, a widow with two children. He owned a farm in Mecklenburg county, and was well to do. She owned a valuable farm in Brunswick county, left to her for life by her former husband, R. S. Sims, and considerable personal property, choses in action, etc., some given to her for life, and some given absolutely. They lived on the farm of the wife until during the year 1877, when Dr. Riggan wished to return to his farm in Mecklenburg, which had been rented out in the meantime; and they agreed to sell the wife's interest in the Brunswick farm to her son, Dr. R. H. Sims, and a sale was accordingly made as will be fully set out later on. Dr. Riggan died, or was killed, in December, 1890, leaving surviving him his widow, and a brother, James V. Riggan, of Mississippi, the next of kin and only heir at law of the decedent. In May, 1891, the widow, Harriet B. Riggan, filed her bill of complaint in the Circuit Court of Mecklenburg county against W. H. Jones, who had qualified as administrator of E. H. Riggan, deceased, and A. H. Bra-

cey, to whom James V. Riggan had sold and conveyed, by
deed of record, the whole of his interest in the estate of the
intestate, alleging that, at the time of complainant's mar-
riage with the decedent in 1876, she owned and possessed a
large amount of personal property, and a large and valuable
real estate during her life, which she acquired under the
will of her former husband, Sims; that before and after this
marriage with E. H. Riggan, they mutually agreed that the
property of the complainant should remain as her separate
estate, to be managed by him as her agent or trustee, and
that as to whatever moneys her husband might receive be-
longing to her he should sustain the relation of debtor to
her to that extent; that at the time of the death of com-
plainant's husband, he was indebted to her in a large sum
of money—the amount he received for her under the agree-
ment aforesaid, and under the laws of Virginia, etc., and
that the administrator, Jones, wrongfully and unlawfully
withheld from her the exemption to which she was entitled,
etc.   Jones, the admr., and Bracey, the assignee of J. V.
Riggan, filed their separate answers to this bill.

The cause was referred to a Master Commission to take
and state the accounts usual in such cases, including an
account of debts outstanding and owing by the decedent, E. H.
Riggan; and the Commissioner at the November Term, 1891,
as to the claims asserted by the complainant, Harriet B.
Riggan, reported that she was entitled to receive from the
estate of the intestate the sum of $2,000.00, the amount of
the bond of R. H. Sims for the interest of the complainant in
the real estate of her former husband, sold to Sims in April,
1876, and collected by Dr. Riggan, with interest on this sum
from the death of Dr. Riggan, December 25, 1890, till paid.
Also certain debts due Mrs. Riggan before her marriage,
which need not be particularly set out here.   To this report
the complainant excepted, first, because the Commissioner
did not report the whole debt of $3,000.00 and interest as

claimed by complainant; and second, because the Commissioner only allowed interest on the $2,000.00 (proceeds of the sale of the land to R. H. Sims) from the death of E. H. Riggan, instead of from the 1st day of January, 1878, the date on which it is alleged that this money was collected.

The defendants excepted also, but their exceptions need not be set out, as the only questions raised by them to be considered on this appeal are as to the correctness of the report allowing to Mrs. H. B. Riggan the claim of $2,000.00, with interest, and another debt of $270.28.

Upon the hearing of the cause on the report of the Commissioner, and the exceptions of complainant and defendant thereto, the Circuit Court overruled all the exceptions that were in conflict with the opinion of the court, as set out in its decree of the 8th day of June, 1892, and decreed that the choses in action owned by H. B. Riggan at the time of her marriage with E. H. Riggan but not collected by him till after the 4th of April, 1877, (date of married woman's act) Acts, 1876–7, ch. 329, p. 333, became the separate estate of H. B. Riggan, and that E. H. Riggan had no interest therein, and that for any amount he collected thereon after April 4, 1877, he became the debtor of H. B. Riggan, and the statute of limitations pleaded by E. H. Riggan's admr. against the recovery of the amount of said collection, began to run from the time it is proved that H. B. Riggan had knowledge of such collection, and, it manifestly appearing that H. B. Riggan knew of the collection by her husband of $55.55 of the Deldridge debt at the time of the collection, May 22, 1884, and of the collection by him of $19.00 of Louisa Butler, December 23, 1884, the recovery of both these amounts of E. H. Riggan's estate is barred.

The decree then proceeded as follows: "The court is further of opinion that, in respect to the real estate owned by H. B. Riggan at the time of her marriage with E. H. Riggan, and which he took possession of, she owned an estate

for and during her natural life in certain lands, and E. H. Riggan, by virtue of his marriage with her, became entitled to the rents and profits of said real estate during the joint lives of himself and wife (coverture), and that neither he nor his estate are liable to H. B. Riggan, or her administrator, for such rents and profits collected by him during coverture * * * * , and that said E. H. Riggan and H. B. Riggan, having by their deed, sold and conveyed their joint estate in this land for $2,000 to R. H. Sims, and the said $2,000 having been paid to E. H. Riggan, he or his estate is not liable to H. B. Riggan for said $2,000, and that the said H. B. Riggan, or her administrator, is not entitled to recover of E. H. Riggan any greater amount of the said $2,000 than an amount equal to the value of said H. B. Riggan's estate in said land sold to R. H. Sims by Riggan and wife, which was an estate for her life, from and after the death of her husband, E. H. Riggan, which occurred the 24th of December, 1890, and the said H. B. Riggan having died in December, 1891, surviving her husband only one year, and all parties having admitted that the annual rents and profits of said real estate are $275, the court is of opinion that H. B. Riggan is only entitled to recover of E. H. Riggan's estate $275 of said $2,000, being an amount equal to one year's rent of said real estate, and which is the value of H. B. Riggan's estate in said real estate sold to R. H. Sims, which $275 should carry interest from December, 1891. * * * * * * *

From this decree an appeal was allowed to this court on the petition of R. H. Sims, administrator of Mrs. H. B. Riggan, who had died.

It may be observed in the outset that this decree is plainly erroneous in decreeing to the estate of Mrs. H. B. Riggan the sum of $275.00, being an amount equal to one year's rent of the real estate sold to R. H. Sims, for, as will be seen later on, if Mrs. H. B. Riggan united in the deed conveying her

real estate to R. H. Sims, voluntarily and unconditionally, she parted with all interest therein and could not set up any claim thereto, or against Dr. Riggan's estate on account of that conveyance.

The contention of appellant is that the decree is erroneous in not allowing the administrator of Mrs. Riggan the $2,000.00 paid by R. H. Sims to Dr. Riggan, the purchase price of her land conveyed to Sims in 1876, with interest on this amount from January 1, 1878, till paid; and in holding that two small claims of $55.55 and $19.00, reported in Mrs. Riggan's favor by the commissioner, are barred by the statute of limitations.

As to the claim of Mrs. Riggan to the purchase money for the land conveyed to R. H. Sims, the evidence is as follows:  First. The deed of Dr. E. H. Riggan and his wife of April 26, 1877, conveying to Sims " all of their right, title, and interest to and in the real estate, together with all the fixtures and appurtenances thereunto belonging, being the same devised by the will of the late Richard S. Sims to Harriet B. Sims, his wife, as her dower, or life estate." Then R. H. Sims testifies as follows: Q. 10. " Please state all you know as to any agreement made between your mother and Dr. Riggan as to how this property, given to her by the will of her first husband, should be held after their marriage, and how the proceeds of that sold should be held and disposed of?"  A. "It should be held as her separate estate, and disposed of by her will if she thought necessary, and at the time of Dr. Riggan's death she had a will written."  Q. 11. "Did you ever hear Dr. Riggan say that this was the agreement, or did you ever hear your mother say so in Dr. Riggan's presence?"  A. "Yes, sir, I have heard both speak of it."  Q. 12. "Who bought your mother's life interest in the real estate left her by the will of her first husband?"  A. "I."  Q. 13. "When did you buy it, at what price, and upon what terms?"  A. "26th of April, 1877, by bond

due January 1, 1878, for $2,000.00 ?" Q. 14. "To whom was this bond payable?" A. "To E. H. Riggan for my wife, H. B. Riggan." Q. 15. "Was there any conversation between yourself, Dr. Riggan, and your mother at the time of this purchase as to how the bond was to be payable, who was to collect the money, and how the money was to be held? If so, what?" A. "It was agreed between all parties that the bond should be given for mother's benefit, and that Dr. Riggan should manage it for her." Then in answer to the question, "Are you perfectly certain, from the declarations of Dr. Riggan, from statements made by your mother in Dr. Riggan's presence, and from conversations you heard between them, that it was agreed between Dr. Riggan and your mother that he should hold the property received by her from her husband's estate for her benefit, and the proceeds of the property, when sold, he should hold in trust for her?" This witness says: "Yes, sir."

C. W. King testifies in relation to this matter that he heard Dr. Riggan speaking of holding some money for his wife, or having some belonging to her; that Dr. Riggan said he had sold her interest in her land to her son who paid for it; that he (Dr. Riggan) held the money for his wife, and that he spoke of the amount as being about $3,000.00. Dr. Riggan frequently spoke of this money that he held for his wife, and, as witness thought, he always spoke of it as about $3,000.00.

John C. Sims also testified that he heard Dr. Riggan, two or three times, or oftener, speak of his holding money belonging to his wife, saying that he had $2,000.00 or $3,000.00 of his wife's money; that he loaned witness a part of it with the consent of Mrs. Riggan given in witness's presence. This witness then in answer to the question, "Was not Dr. Riggan a remarkably particular man in the management of his own pecuniary matters, and in keeping them clearly distinct and separate from such matters as he man-

aged in trust for others ? " Says, " Dr. Riggan was a very particular man, so much so that in a former will he had some years ago the first thing he said was he wanted $3,000.00 returned to his wife that he had belonging to her; he showed it to me." Then the witness states why that will was destroyed which was not because it recognized this debt, but for entirely different reasons.

It appears from the evidence that at about the time Dr. Riggan had these conversations with witnesses John C. Sims and C. W. King he had in his hands either from the bond collected of Dr. Sims, and the interest thereon, or that and other sums collected for account of his wife, or of debts due to his wife, about $3,000.00.

It is admitted that a writing, called in this record " Notes for a will," and found among Dr. Riggan's papers at his death, is wholly in his handwriting, and in that writing there appears this clause: " My wife to have $3,000.00 returned to her, the amount of her estate."

It is also admitted in the record that a paper, which is a draft of a will of Mrs. Riggan, found among her papers and filed before the Commissioner, is wholly in the handwriting of Dr. Riggan. And in this writing the money in the hands of Dr. Riggan, belonging to Mrs. Riggan, is disposed of. Only a part of the bond executed by Dr. Sims for the purchase money for Mrs. Riggan's land, sold to him as before stated, is produced. Dr. Sims, the witness who produced it, explained how the other portion got lost; and on the portion of the bond produced the following receipt appears: " Received December 6, 1881, of R. H. Sims $1,286.19, in full payment of the within bond, said bond being in full payment for the real estate of my wife, H. B. Riggan, her dower interest in her first husband's estate.

(Signed)          E. H. RIGGAN."

There were other receipts produced showing payments on

this bond, but they need not be specially noticed, all of which as well as the bond in question, were made after the passage of the Act of April 4, 1877, commonly known as the "Married Woman's Act."

Upon this state of facts the two questions. to be considered are: First. Was there any agreement between Dr. E. H. Riggan and his wife H. B. Riggan, during the coverture, that she should have the proceeds of the sale of the property conveyed by them to Dr. R. H. Sims, and for which the bond for $2,000.00 was given; and,

Second. If there was such an agreement (there being no creditors of the husband affected thereby) can it be enforced in a court of equity?

Counsel for appellee undertake to throw doubt on the testimony of Dr. Sims,. because he was testifying as a witness for his mother, who is since dead, and consequently as an interested witness. Dr. Sims was a competent witness when he gave his testimony in this case, and the argument of counsel, however insinuating or ingenious, cannot serve to efface the evidence of a competent and credible witness. This can only be done by testimony showing the contrary facts to those testified to by the witness, or from circumstances from which they may be inferred, or that he is unworthy of belief. No such testimony is to be found in this record, and therefore Dr. Sims' testimony is uncontradicted, and he is unimpeached. Indeed, his testimony is corroborated and sustained by the only other witnesses examined in the case, Chas. W. King, and John C. Sims, neither of whom, it can be claimed, has the slightest interest in the subject matter. The witness is further corroborated by the will and the draft of the will written by Dr. Riggan, as we have before seen, as well as by the draft of a will for Mrs. Riggan, in which the money in question was mentioned and disposed of, wholly in the handwriting of Dr. Riggan. We have examined the original

bond in question, and do not find that its appearance or condition raises the least suspicion that Dr. Sims' statement, as to how a portion of it got lost, is untrue. The final receipt, wholly in the handwriting of Dr. Riggan, below the portion of the bond that remains, is also corroborative of the statement as to how the bond itself was written. The provision in the bond as stated by Dr. Sims, viz: "To E. H. Riggan for my wife H. B. Riggan," is awkwardly expressed, but when considered in connection with the final receipt written on the bond, set out in full above, it is a reasonable conclusion that the bond as originally drawn, clearly showed that the money to be paid to Dr. Riggan was to be for the benefit of his wife, H. B. Riggan, in accordance with the agreement made and entered into by all the parties when the bond was executed by Sims. It is not at all reasonable to suppose that Dr. Riggan would have written the final receipt upon the bond in the form that he did if his wife had no interest in it. We are of opinion that the agreement between Dr. E. H. Riggan and his wife, made at the time of the sale of the wife's land to Dr. Sims, and of the execution of the bond of Sims for the purchase money, that the money was to be paid to Dr. Riggan and held by him for the benefit of his wife, is proven, and that the bond was so written. This agreement having been proven it only remains to be determined whether such an agreement can be enforced in a court of equity.

Appellees' counsel admit that if there was any proof that Mrs. Riggan refused to execute the deed to Dr. Sims, except upon condition that the bond should be payable to her, she might be entitled to the money, and they seem also to admit that if the bond had been found among Dr. Riggan's papers after his death, and uncollected, it would have been treated as a perfected gift, and a complete segregation of that particular property from the residue of his estate.

There is certainly no proof that Mrs. Riggan refused to

sign the deed except upon the condition that the bond was
to be made payable to her, or for her benefit.   There was
no occasion for any such refusal on her part.   It had been
agreed before hand, that the bond should be so payable, and
the bond was executed accordingly, whereby Dr. Riggan
assumed the attitude of a trustee, holding the bond for the
benefit of his wife, and as her separate estate, and when the
money was collected thereon he occupied the same position
with relation to it.   Here is an executed trust, declared on
the face of the bond itself; and the trustee collected the
money as he was authorized thereby to do.   2 Pom. Eq.,
1001.

In *Richards* v. *Delbridge,* L. R. 18 Eq., 11, it is said by
Jessell, M. R.: "The legal owner of the property may, by
one or other of the modes recognized as amounting to a valid
declaration of trust, constitute himself a trustee, and, with-
out any actual transfer of the legal title, may so deal with
the property as to deprive himself of the beneficial owner-
ship, and declare that he will hold from that time forward
in trust for the other person.   It is true he need not use the
words, 'I declare myself a trustee,' but he must do something
which is equivalent to it, and use expressions which have
that meaning."   And in the same case it is said that the
words " I undertake to hold this bond for you," would un-
doubtedly have amounted to a declaration of trust.   See
also *Williams* v. *Yager,* 91 Ky. 282; 34 Amer St. R. 184 and
notes, pp. 191, 193, 195, 196; 201, 202, and cases cited.

The receipt of Dr. Riggan for the last payment on this
bond not only contains an expression meaning that he re-
ceived the money for the benefit of his wife, i. e. in trust
for her, but the bond itself, also written by him, contained
a more explicit expression that could have no other mean-
ing than that he declared himself a trustee to hold the bond
for his wife's benefit, and the money, when collected, in
trust for her.   To what money could Dr. Riggan have had

reference when he said in each of the wills he wrote: " My wife to have $3,000 returned to her, the amount of her estate," if it was not this money ?    The declarations that he made to Sims and King were meaningless if he did not refer to the money he had received from the sale of his wife's land.    Indeed, he said to King that the money he had was for his wife's interest in her land sold, and that it belonged to her.

A trust created by the husband in favor of the wife has over and over again been sustained as founded on a meritorious consideration, which the law always implies in the relations existing between husband and wife, and parent and child.    This case, however, does not stand alone upon a meritorious consideration, but upon a valuable consideration.    It is true Dr. Riggan had an interest in the land, i. e., the right to the rents, issues, and profits during his life, provided he lived as long as his wife did.    It was not, however, the ordinary interest a husband has in his wife's land. He was not tenant by the curtesy, as it could not become initiate or consummate.    His interest would have continued only during their joint lives, ceasing at the death of either, while her interest would continue so long as she lived, even though her husband might have died years before she did. Yet by the decree appealed from his interest is made to appear as worth $1,725 and all accumulated interests, while hers was fixed at only $275.    Whatever might have been his interest he had the right to dispose of it as he did.    He was not indebted.    No question of creditors arises in the case.    It was not the husband's land in which the wife was relinquishing dower, but the wife's land in which he only had the rights to the rents, issues, and profits arising during their joint lives.

If a trust is once effectually created by *parol* it cannot subsequently be revoked or altered by the party creating it, for it is governed by the same rules that govern trusts by

writing. 1 Perry on Trusts, sec. 77. That a trust can be established in personalty, or in the proceeds of realty by parol testimony alone, seems to be well settled. 1 Perry on Trusts, secs. 82 and 86, and cases cited. See also *Bank of United States* v. *Carrington,* 7 Leigh 566; *Phelps* v. *Seely,* 22 Gratt. 573.

This suit is brought by the *cestui que trust* to recover of the estate of the trustee, Dr. Riggan, the money received and held by him for her benefit, as authorized by the instrument creating the trust, and it being a peculiar province of courts of equity to enforce trusts, the claim of Mrs. Riggan, the *cestui que trust,* asserted in this suit against the estate of Dr. Riggan, the trustee, for the money received by him as the proceeds of the sale of her land to Dr. Sims can and ought to be enforced. *Gorden* v. *Tucker,* 6 Me. 1; *Jones* v. *Obenchain* 10 Gratt. 259; *Sayers* v. *Wall,* 26 Gratt. 354; *Fox* v. *Jones,* 1 West Va. 205, 2 Kent's Com. 174; *Tullis* v. *Fridley,* 9 Minn. 79; *Stanwood* v. *Stanwood,* 17 Mass. 57; *McCampbell* v. *McCampbell,* 2 Lea 661.

We do not see that sections 2413, 2414, and 2840, so much relied on by counsel for appellees, have any application to this case. The first refers entirely to conveyances of estates in realty; the second to gifts of goods and chattels, and if it referred to choses in actions (as to which we express no opinion) it would still, from what has already been said, have no application; and the third, (Section 2840) is wholly inapplicable, as there is no allegation or proof in the record that the agreement, as to how the proceeds of the sale of the land to Dr. Sims would be held, was "upon consideration of marriage," so as to bring it within the provision of this section.

As to the two sums, of $55.00 and $19.00, collected by Dr. Riggan on demands due his wife after the passage of the "Married Woman's Act" of April 7, 1877; while these sums of money were under this Act the separate estate of

the wife, they were not at all involved in the trust upon which Dr. Riggan held the funds collected from Dr. Sims for his wife's interest in the land, and the Circuit Court was right in holding that the statute of limitations pleaded by Dr. Riggan's admr. barred their recovery,

Nor is there error in the ruling of the court, of which appellees complain, in holding Dr. Riggan's administrator liable to Mrs. Riggan's administrator for $132.66, with interest on $70, and $1.50, parts thereof, being the total of two sums collected by Dr. Riggan on debts due his wife after the passage of the Act of April 7, 1877, there being no proof that Mrs. Riggan knew of the collection of these sums.

It is also contended by appellees that it was error to decree to Mrs. Riggan's administrator the value of the property which was exempted to her as the widow of Dr. Riggan under section 3653, and sold by his administrator. This was not error, as the plain language of section 3653 exempts to the widow in every case, whether the estate be solvent or not, the articles enumerated in section 3650.

For the foregoing reasons we are of opinion that the decree of the Circuit Court is right in all respects, except in so far as it only decrees in favor of Harriet B. Riggan's administrator against the estate of Dr. E. H. Riggan, deceased, for the sum of $275, with interest thereon, from December 25, 1891, when the decree should have been for the principal sum of $2,000, with interest from January 1, 1878, till paid, and in this respect the decree will be reversed and annulled, and the cause remanded to the Circuit Court for such further proceedings herein as may appear proper and in accordance with this opinion.

*Reversed.*

KEITH, J., dissenting said :

I am unable to concur in the opinion just delivered. A trust, such as it is sought to establish in this case, ought to

be proved by convincing testimony. The proof here is, to my mind, of a most unsatisfactory character, and consists of an improbable story told by an interested witness; corroborated, if at all, by loose verbal declarations, and by written memoranda found among the papers of E. H. Riggan, deceased, which show nothing more than that the creation of such a trust was at some time in contemplation, but remained at his death wholly unexecuted.

I do not think that a verbal declaration that a husband will hold as trustee for his wife a certain portion of his own estate, where the declaration rests upon no consideration whatever, can be enforced in a court of equity. The decision, in my judgment, is a most dangerous expansion of the principles and authorities upon which it professes to rest.