## CIRCUIT COURT OF THE CITY OF ROANOKE

In re Estate of
Florence Wade Smith Toler Hess

### December 19, 1986

By JUDGE JACK B. COULTER

With the post-hearing publicity that this case has generated (see December 1, 1986, issue of the *Virginia Lawyers Weekly*, 1 V.L.W. 437, and publication of the contrary opinion of the Attorney General issued October 27, 1986), it would appear incumbent upon this court to set forth reasons in support of its decision denying the petition of Virgil J. Hess, the surviving husband of Florence Wade Smith Toler Hess, by which he sought a family allowance under Section 64.1-151.1 of the Code of Virginia of 1950, as amended, and the exempt property and homestead allowances which follow under Sections 64.1-151.2 and 64.1-151.3. Parties are entitled to, and the law is better served, if trial courts give reasons for their judgments so that appellate courts, legislative committees, and law review scholars are better advised in reviewing such judgments in order to correct, criticize, or approve the decision under review.

In the case at bar Florence Wade Smith Toler Hess died intestate at the age of 61 on November 28, 1985, being survived by her husband of eleven years, Virgil J. Hess, with whom she was living at the time of her death. The extent of his dependency upon her, if any, is not disclosed by the record; but he was receiving social security disability benefits in the amount of $518 per month and she was receiving similar disability benefits in the amount of $325 per month. They were not survived by any minor children. Mrs. Hess's children

by a previous marriage, Ralph Toler and Aleta Wynona Toler Spradlin, who were 38 and 34 at the time of their mother's death, respectively, are also statutory beneficiaries of the decedent's estate and normally entitled to preferential status under the statutes of descents and distribution over their stepfather. The estate apparently consisted of personal property estimated at $5000 and real property appraised at $5000.

It is important to emphasize at the outset that this is not a contest between creditors and an estate but a dispute between competing beneficiaries: a surviving husband and his adult stepchildren. With no will involved and no family surviving, the normal distribution as provided under the statutes of descents would control but for the suggestion advanced by the surviving stepfather that the new statutes were intended to alter that scheme of distribution by granting one statutory beneficiary certain advanced priorities over others. Such change in the designated order of descents, of course, is the usual function of wills.

The new statutes at issue, being obviously intended to protect a *family* from the designs of creditors (whether or not those creditors are unscrupulous or themselves have dependents), it becomes particularly noteworthy that the order of these exemptions and allowances as proposed by the Uniform Probate Code has been deliberately reversed by our legislature. Whereas the Uniform Probate Code put the homestead and household exemptions first, ahead of and prior to the family allowance, the General Assembly placed the family allowance first, making the homestead and household exemptions subordinate to and dependent upon the family allowance.

Such rearrangement makes singularly significant the beginning phrases of both Sections 64.1-151.2 and 64.1-151.3: *"In addition to* the family allowance" and *"In addition to* the right to family allowance." There had to be a family allowance, in other words, before the household and homestead exemptions were to apply. For something to be "in addition to" there must be something in existence in the first place to which the addition is to attach.

The determination of what makes up a family, then, becomes of paramount importance, for it is the family unit that these statutes are designed to protect, not

indirect amendment of, or interference with, the statutes of descent and distribution. The Virginia law was adopted to keep creditors from taking an entire estate from a surviving spouse and minor, dependent children; it was not written to give a surviving spouse the right to take the entire estate to the detriment of other heirs of the decedent who are actually favored by the laws of intestacy as in the case at bar.

What, then, makes up a family? "Family" by definition requires a group of two or more people. *Webster's Seventh New Collegiate Dictionary* (1967) includes in its definition: "a group of individuals living under one roof" and "the basic unit in society having as its nucleus two or more adults living together and cooperating in the care and rearing of their own or adopted children."

In *Carroll* v. *Arlington County*, 186 Va. 575, 578-579 (1947), our Supreme Court observed:

> The central thought underlying the family relation is that of dependence, and hence any number of persons *more than one* living together under the same roof. . . may be said to be a family.
>
> The only way a single person living alone can become a family is by statute. (Italics added.)

Mrs. Hess was *not* survived by any "family," at least not by any living under the same roof or dependent on her or on each other. The "family" of Mr. and Mrs. Hess upon Mrs. Hess's death simply became one person; there was no "family" upon her death. Mr. Hess was a single person living alone. No Virginia statute has made such person a family.

Section 64.1-151.1 provides in pertinent part that upon a domiciliary's death:

> the surviving spouse *and minor children whom the decedent was obligated to support* are entitled to a reasonable allowance in money for *their* maintenance during the period of administration. (Italics added.)

Both the title to this section ("Family Allowance"), the actual use of this phrase three times in the statute,

and the references to it in the sections which follow, clearly identifies this allowance as a "family allowance." There being no family to which such allowance could be awarded; there being no "minor children whom the decedent was obligated to support," the granting of any such allowance in order to rearrange the preference given to stepchildren of a surviving spouse over that spouse, which is the mandate of Section 64.1-1, would be a neat trick of judicial legislation.

The language chosen by the legislature is clearly and unambiguously stated in the conjunctive. Being in the conjunctive, both elements are essential before the entitlement can come into existence. Such is a fundamental axiom of logic; such is basic to the English language. Reference to Professor J. Rodney Johnson's law review article on the subject ("Support of the Surviving Spouse and Minor Children in Virginia: Proposed Legislation v. Present Law," 14 U. Rich. L. Rev. 639 (1980)), only accentuates this point, for in his beginning paragraph he writes:

> The death of any person creates for the decedent's family a number of problems of varying degrees of difficulty and immediacy. When the decedent's family consists of a surviving spouse *and/or* minor children who are dependent upon the decedent for their support, these problems have the highest degree of immediacy. (Italics added.)

But the statute did *not* incorporate the disjunctive which might have been Professor Johnson's preference. Nor was the language used in the title to the act which was stated in the disjunctive ("An Act to amend and reenact. . . the Code. . . so as to set aside or exempt certain property to support a surviving spouse *or* minor children on the death of one spouse." 2 Va. Acts 1981, Ch. 580, p. 897) adopted by the conjunctive declarations of the statute. Whether this was mistake or oversight or whether an intentional and deliberate modification is not the function of the court to resolve in the absence of ambiguity. Courts do not make the law or second guess legislative policy.

The Attorney General in her opinion notes that "exemption statutes are to be construed liberally in favor of debtors and strictly against creditors," but the case

at hand is not a contest between creditors and debtors. These statutes are, in fact, in derogation of the common law and hence should be strictly, not liberally, construed. If it were intended to extend the "family" allowance to "*either* the surviving spouse *or* the surviving spouse and minor children dependent on the decedent for support," the language could have easily so expressly provided as do, in fact, the statutes of Idaho and Colorado (see Idaho Code Section 15-1-403 and Colo. Rev. Statute Section 15-11-403).

The concluding language of Section 64.1-151.1 might, on first reading, suggest conflict with the initial conjunctive requirements of the first sentence. This concluding language provides:

> in case any minor child is not living with the surviving spouse, the family allowance may be made partially to the spouse and partially to the person having the child's care and custody as their needs may appear.

But this possibility of a partial allowance to a surviving spouse is expressly conditioned upon the existence of a minor child; without any minor children, the condition precedent has not been met; and the possibility becomes nonexistent. Such provision, incidentally, could well have been included to cover the financial obligation of a surviving spouse to contribute to the cost of the care of such minor child who by contract, court order or otherwise might be in the custody of another.

The cases cited by the petitioning stepfather, *Riggan's Adm'r. v. Riggan*, 93 Va. 78 (1896), and *McDaniel v. Guthrie*, 16 Va. Law Register, 659 (1911), are interesting for their historical background, but these disputes involved statutes obviously designed to protect women and children. In each case the rights of a widow or infant children were at issue. And the statutes then in effect, whether read conjunctively or disjunctively, applied to "a widow, infant children or a daughter who has never married." The particular solicitude for women, who in those days were rarely employed and seldom had separate

estates, was the then legitimate concern of the legislature. Widowers and male adult children were not included.

In her memorandum to this court of November 8, 1986, counsel for the surviving husband quoted from Judge Staples's last paragraph in the circuit court opinion of *McDaniel* v. *Guthrie*:

> I am therefore of the opinion that where a householder dies leaving a widow, *or* infant children, *or* a daughter who has never married that such of these as may be, taken (sic) an absolute title to the articles enumerated in Section 3650 of the Code regardless of any attempted testamentary disposition thereof. (Italics added.)

But in the paragraph immediately preceding Judge Staples had written:

> After that date this exemption was made to vest "absolutely" in the widow *and* infant children or unmarried daughters. (Italics added.)

Such inconsistency only demonstrates the inattention being given to a detail not at issue in that case which involved a dispute between infant children whose parents were both dead and the executor of their father's estate.

The other case referred to by counsel for the petitioner, *Riggan's Adm'r.* v. *Riggan*, primarily involved the contested validity of a parol trust as to the proceeds of the sale of the wife's real estate which had been realized while both husband and wife were living. Both spouses were dead at the time of the litigation. Headnote 3 quoted by the petitioner to the effect that the widow of a man having no children is entitled to her poor debtors exemption whether her husband's estate is solvent or not is not the language found in the text of the opinion. This issue was addressed in only one brief paragraph at the conclusion of the court's twelve-page opinion. Again, it was the rights of a widow, not a widower, in question; and the thrust of the decision was whether or not the exemption could be awarded where the estate was insolvent.

Reliance on such cases as these dilutes the vigor of the petitioner's argument whether being made to the court or in post-trial interviews with the press.

Counsel for the petitioner has recently referred to a similar case decided July 10, 1985, by Judge Lloyd C. Sullenberger of the Circuit Court of Culpeper County in the *Estate of John Moffett Brown, Jr.* The facts in that dispute are somewhat different because there was a minor child living in the Brown household at the time of his death, even though he was not the child of the decedent; and there was a will that the widow had renounced. Even so, Judge Sullenberger's opinion does support the position of the stepfather in the case at bar, which is one of the reasons this court has reviewed its own analysis. Further reflection, however, only reenforces this court's conclusions. We are dealing here with family rights which to this court the statutes make obvious; there is no family within the meaning of that term who survived the death of the decedent. There are no minor children whom the decedent was obligated to support. Ergo, there can be no family allowance. And since the other exemptions are "in addition to the family allowance," there being nothing for them to be "in addition to," they too must fail.

Stripped of all semantics, the ultimate question is: Can a *family* allowance be awarded where there is no family? To ask the question is to answer it.

The decision denying the petition is reaffirmed.